COMMONWEALTH *vs.* JOHN D. BEAUDRY, JR.

Hampshire. November 9, 2005. - December 20, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Rape. Indecent Assault and Battery. Evidence,* Sexual conduct, Credibility of witness. *Practice, Criminal,* Argument by prosecutor.

At the trial of indictments charging the defendant with rape of a child, indecent assault and battery on a child under the age of fourteen years, and open and gross lewdness, the prosecutor's closing argument, suggesting that the complainant's testimony was true because it was implausible that a child would possess knowledge of the sexual acts alleged unless she had acquired it from the acts with which the defendant was charged, was improper and warranted reversal of the judgments, where there was no factual basis in the record from which to argue that the complainant demonstrated knowledge of sexual mechanics or terminology not ordinarily possessed by children of her age. [579-586]

No substantial risk of a miscarriage of justice arose at a criminal trial, where the defendant acquiesced in the curative instruction that the judge gave after the defendant had objected to a segment of the prosecutor's closing argument. [586-588]

INDICTMENTS found and returned in the Superior Court Department on July 11, 2000.

The cases were tried before *Bertha D. Josephson,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Jane Larmon White,* Committee for Public Counsel Services, for the defendant.

*Judith Ellen Pietras,* Assistant District Attorney, for the Commonwealth.

COWIN, J. Once again we consider a challenge to a prosecutor's closing argument. The defendant was indicted for sexual offenses against his daughter: three counts of rape of a child; four counts of indecent assault and battery on a child under the age of fourteen years; and one count of open and gross lewdness. The indecent assault and battery charges were characterized

"second or subsequent." A jury convicted the defendant of all the substantive charges, and he then pleaded guilty to the second or subsequent portions. The defendant appealed and the Appeals Court affirmed the judgments. *Commonwealth* v. *Beaudry*, 63 Mass. App. Ct. 488 (2005). We granted the defendant's application for further appellate review limited to the propriety of the closing argument. Because we conclude that the argument was improper and prejudicial, we reverse the judgments. We proceed to recite the facts the jury could have found in some detail in order to explain our conclusion that the improper closing argument was sufficiently prejudicial that the convictions must be reversed.

1. *Facts.* The child, Cathy, who is the subject of the allegations, is the defendant's daughter. The defendant is the former husband of Cathy's mother, Deborah Foster.[1] The couple separated in 1990, when Cathy was about one year old. The defendant moved to Massachusetts and Foster and the child remained in Florida where the family had been living. The defendant had little or no contact with Cathy for the next eight years. During the summer of 1998, Foster contacted the defendant to inform him that she could no longer care for the nine year old child because of her violent outbursts and assaultive behavior. The defendant agreed to take custody of Cathy when Foster told him that if he did not do so, she would have the child placed in a foster home or an institution. In Massachusetts, Cathy first lived with her paternal grandmother, but she and her grandmother soon moved into an apartment with the defendant. Cathy was homesick, had difficulty socializing in Massachusetts, and repeatedly asked her mother if she could return to Florida. Although Cathy expressed a desire to visit Florida for Christmas, she was not permitted to do so.

Foster received a telephone call in March, 1999, from Cathy's grandmother, recounting the child's increasingly disruptive behavior. Cathy joined the telephone conversation, and when she expressed hopes of a Florida visit, she was again rebuffed; her mother told her that a visit was not possible until the end of the school year. Immediately thereafter, Cathy told her mother that her father had sexually abused her.

---

[1]The child and her mother are referred to by pseudonyms.

After the abuse allegations, Cathy was sent home to Florida, where her mental condition declined and she was eventually institutionalized for about one week. There was testimony that relatives, including her mother, said that Cathy had recanted the allegations at different times.

Although not before the jury, an investigating officer testified at the grand jury concerning the defendant's abuse of an older daughter, Cathy's sister. This testimony is relevant to our consideration of the prosecutor's closing argument.

2. *Closing argument.* The defendant maintains that the prosecutor's closing argument was improper in two respects. He claims that the prosecutor suggested, without evidentiary support, that the defendant's sexual abuse of Cathy was the only source of the child's age-inappropriate sexual knowledge. The defendant's second contention is that the prosecutor improperly asked the jurors to credit the child's testimony merely because she testified in court, and to discredit the defendant's testimony because he had a stake in the outcome of the trial (and thus a motive to lie). The Appeals Court determined that the prosecutor's comments regarding Cathy's sexual knowledge did not amount to reversible error because the Commonwealth had established a "minimally sufficient" factual basis to justify arguments about sexual innocence. *Commonwealth* v. *Beaudry*, *supra* at 496-497. The Appeals Court also concluded that the prosecutor's statements asking the jury to believe Cathy, although improper, were offset by an emphatic curative instruction. *Id.* at 501-502. Finally, the Appeals Court held that the prosecutor's statements explaining why the defendant should not be believed were not improper. *Id.* at 501.

a. *Sexual innocence.* In closing argument, the prosecutor stated:

> "The other thing I asked you to consider was how would a nine year old child know about these numerous and very sexual acts that she testified to?
>
> "Does the average nine year old child know about a man licking a female's vagina? Does the average nine year old little girl know about a man putting his penis in someone's mouth? Does the average nine year old child

know about a man putting his penis, or trying to put his penis in the buttocks of someone else, putting his fingers in the vagina of a female? Or does the average nine year old child know that when a man grabs his penis and moves his hand up and down that the penis rises and white stuff comes out of it?

"If a child has not experienced these things, how do they have [*sic*] all that sexual knowledge? [Cathy] told you nothing like this had ever happened to her before. Add [*sic*] not only did she tell you what her father did, she gave you details. . . .

"That is something a nine year old kid makes up? If a child doesn't experience sexual things, how do they make up that kind of detail?"

The defendant objected at the end of the closing on the ground that the argument was inappropriate because there was no evidence what a nine year old might know and because "asking the jury to speculate regarding that is improper." We agree.

"Prosecutors must limit the scope of their arguments to facts in evidence and inferences that may be reasonably drawn from the evidence." *Commonwealth* v. *Coren*, 437 Mass. 723, 730 (2002), citing *Commonwealth* v. *Good*, 409 Mass. 612, 623 (1991). A prosecutor may not use "closing argument to argue or suggest facts not previously introduced in evidence." *Commonwealth* v. *Storey*, 378 Mass. 312, 324 (1979), cert. denied, 446 U.S. 955 (1980).

Here, the prosecutor exceeded the scope of proper argument by referring to facts not supported by evidence and not within a juror's common knowledge and suggesting an inference that could not reasonably be drawn from the evidence. The inference that the prosecutor suggested was that the complainant's testimony was true because "it was not plausible that a child would possess knowledge of [the] sexual [acts alleged] unless she had acquired it from the acts with which the defendant was charged." *Commonwealth* v. *Scheffer*, 43 Mass. App. Ct. 398, 401 (1997). However, there was no factual basis in the trial from which to argue that the child demonstrated knowledge of

sexual mechanics or terminology not ordinarily possessed by children of her age. Although Cathy was twelve years and ten months old at the time of trial (nine years and nine months at the time of the allegations), there was no evidence of the sexual knowledge of an average child nor anything to indicate that Cathy was a typical child of that age. Cf. *Commonwealth* v. *Lamrini*, 392 Mass. 427, 433-435 (1984) (improper to argue robbery as motive for homicide, where no evidence to support such argument).

The Commonwealth claims that, at age nine years, Cathy had in fact "displayed a sophisticated level of knowledge about sexual conduct that could only have been learned through her experience with her father," and that the interviewing police officer's recitation of her initial complaint to him "established that her knowledge of sexual matters was age inappropriate." In support of this conclusion, the Commonwealth contends that there is an assumption "in our society that young children are not aware of sexual acts and terminology." Nothing is before us to indicate whether such an assumption, perhaps valid at one time, remains valid today. Regardless of the accuracy of any such assumption, the parties may not utilize it as the basis for argument without evidence to support the argument.

The Commonwealth argues that *Commonwealth* v. *Ruffen*, 399 Mass. 811, 814 (1987), implicitly acknowledges that young children are not expected to know about sexual activities and the physiology of adult genitalia and thus is authority for its argument. But the Commonwealth reads too much into the *Ruffen* holding. In that case we stated: "If a defendant challenges the reliability of a child's testimony about sexual abuse, it is unfair to deprive him of the right to show that the child had personal knowledge of sexual acts and terminology." *Id.* at 815. Accordingly, because the defendant there had a reasonable suspicion and a good faith basis for the inquiry, he "should have been permitted a voir dire examination of the victim's mother and of the victim to determine whether the victim had been sexually abused in the past." *Id.* Our reasoning for so holding was that sexual abuse of the child in the past in a manner similar to the abuse charged would be relevant and admissible at trial to show the child's knowledge about sexual matters.

*Id.* We explained that, although evidence of the victim's sexual conduct is generally inadmissible, see G. L. c. 233, § 21B (rape shield statute), "the Constitution requires that a defendant be permitted to introduce evidence which may materially affect the credibility of the victim's testimony." *Id.* at 816.

The *Ruffen* case permits a defendant who has reason to believe that a child has been subjected to past sexual abuse to rebut the contention that a child would not possess such "extraordinary knowledge" other than from experiencing the charged sexual acts. *Id.* at 814. The Commonwealth, however, seeks to use the *Ruffen* holding to support the Commonwealth's closing argument that the child here must have learned age-inappropriate language from the defendant. The *Ruffen* case recognizes that jurors might draw an inference based perhaps on an assumption about children's sexual knowledge, but the case does not state that such an assumption is appropriate. The *Ruffen* holding permits the defendant to rebut that assumption by the introduction of otherwise inadmissible evidence (prior sexual experiences of the child). The case does not suggest that any particular complainant does not possess sexual knowledge. Thus, the Commonwealth seeks to transform a case intended as a prophylactic evidentiary exception into a universal statement of fact. We choose not to alter the purpose from one that permits a defendant to prove how, apart from the alleged crimes, a particular child has acquired sexual knowledge, to an invitation to the prosecutor to argue, in the absence of evidence, that a complainant must have acquired the knowledge from the charged abuse. The effect would be to impose on the defendant a burden to present evidence to rebut a child's presumed sexual innocence, a violation of the defendant's due process rights.

The Appeals Court considered one question to Cathy and her negative response "minimally sufficient to support the contested argument." *Commonwealth* v. *Beaudry*, 63 Mass. App. Ct. 488, 496 (2005). We cannot agree. During direct examination on the subject of the defendant's assaults, the prosecutor asked Cathy, "Had anything like that ever happened to you before?," and she responded, "No." Given the many other possible sources for such knowledge today, some of which the Appeals Court itself recognized, *id.* at 496 & n.4 ("the advent of the Internet, and

ubiquitous access to same"; as well as widespread sexual abuse of children), this isolated question is not sufficient to support the argument that the child's knowledge of sexual matters was derived from the abuse charged, and not from other means.

The challenged argument is particularly troubling in this case where there is a suggestion in the record (although not in the evidence before the jury) that the prosecutor was aware that, in fact, there was another conceivable basis of Cathy's sexual knowledge. The defendant had been convicted previously of child sexual assaults on an older daughter. Indeed, it was these prior offenses that formed the basis for the "second or subsequent" charges in the present case. The Commonwealth, in a motion in limine, sought leave to introduce at trial evidence of the defendant's prior sexual abuse of his older daughter on the ground that the "progression of his offenses against [the two children] are almost exactly alike."[2]

More important for our purposes is the grand jury testimony of an investigating officer. He testified that the defendant's mother had provided a written statement detailing that when Cathy came to Massachusetts, the defendant asked his older daughter to explain to Cathy how he had abused the older daughter. They "did their best to explain to [Cathy] what happened with them." This episode was designed to avoid Cathy's "hear[ing] it from someone else and be[ing] hurt a lot worse." Cathy was also told "not to ever let anyone touch her body in places that aren't appropriate."

The grand jury testimony also includes a narrative from the officer of what the older daughter told him about this discussion: "[B]oth she and, to a lesser degree, her father explained what had happened between her father and herself." Due to Cathy's age, however, the older daughter said that "she did not get very specific, other than that some improper things and touching had occurred between her father and herself." She did not tell Cathy the details of the abuse by her father and when Cathy asked her "to describe what it felt like," she refused to do so.

Given this state of the record, we cannot determine exactly

---

[2]The judge denied the motion in limine.

what the prosecutor knew regarding Cathy's prior knowledge of sexual acts. It is certainly possible that the prosecutor believed that the child had been told only generally about what had occurred between her father and her older sister. Some degree of specificity seems to have been necessary, however, or the conversation would have conveyed no information. The testimony concerning this conversation should have alerted the prosecutor to the possibility that Cathy had acquired at least some sexual knowledge from a source other than the charged conduct and further supports our conclusion that the argument here was improper.

We do not suggest that an argument as to age-inappropriate sexual knowledge is never permissible. As with all other statements in closing argument, however, it must be supported by evidence in the record. It may be supported by expert testimony, see, e.g., *Commonwealth* v. *Hrabak*, 440 Mass. 650, 655-656 (2004) (expert testimony necessary to support argument on flexibility of child's rectum); *Commonwealth* v. *Dockham*, 405 Mass. 618, 627-630 (1989) (expert testimony proper where emotional and behavioral symptoms of child sexual abuse victims beyond knowledge of jury). We hold, as did the Appeals Court, that "where a prosecutor *expressly* urges in her closing that a child victim's sexual knowledge was derived from *identified* acts of abuse, there must be an adequate and specific basis in the record for such a claim that excludes other possible sources of such knowledge." *Commonwealth* v. *Beaudry*, 63 Mass. App. Ct. 488, 497-498 (2005).

Having determined that the prosecutor's argument was improper, we evaluate whether the defendant was prejudiced thereby, considering the remarks in the context of the entire argument, the trial testimony, and the judge's instructions to the jury. *Commonwealth* v. *Hrabak, supra* at 654, and cases cited. An error is nonprejudicial only if it appears certain that the improper argument did not affect the jury's verdict. See *id.* at 656. In making this determination, we consider "a number of factors, such as: Did the defendant seasonably object to the argument? Was the prosecutor's error limited to 'collateral issues' or did it go to the heart of the case? . . . What did the judge tell the jury, generally or specifically, that may have

mitigated the prosecutor's mistake, and generally did the error in the circumstances possibly make a difference in the jury's conclusions?" (Citations omitted.) *Commonwealth* v. *Kelly*, 417 Mass. 266, 271 (1994), quoting *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987).

. Defense counsel made proper and timely objection to the prosecutor's statements.[3] Although improprieties in closing argument may be cured by appropriate and timely curative instructions, see *Commonwealth* v. *Kozec, supra,* that did not occur here. The Appeals Court refers to the judge's charge on the "proper use of closing argument" as "forceful," *Commonwealth* v. *Beaudry, supra* at 497, but the referenced segment simply exhorts the jury not to speculate about matters not in evidence, and to confine their deliberations to the evidence. It also states that closing arguments are not evidence, and that jurors should rely on their memory of the evidence if their memory is different from that of an attorney. These remarks are standard fare and do not address the particular problem here. See *Commonwealth* v. *Hrabak, supra* at 657. At no time did the judge focus on the transgression at issue, specifically, that the prosecutor was inviting the jury to draw an inference that could not be supported by the record. See *id.*

As is often true in cases involving sexual abuse, the trial was a battle of the credibility of the witnesses. There was no physical evidence or testimony from eyewitnesses to the abuse. The verdicts rested solely on the jury's believing Cathy. Cathy had recanted her allegations more than once; she was clearly a troubled child who had been hospitalized at one point for her emotional problems; she had a variety of motives for fabrication; and her sister's abuse by their father provided a ready-made scenario for her allegations.

Thus, this error went to "the very heart of the case," *Com-*

---

[3]The Commonwealth asserts that this issue should be reviewed under the substantial risk of a miscarriage of justice standard because the objection at trial was based on different grounds from the argument on appeal. There is no merit to this argument. The defendant objected at trial to the prosecution's assertion that Cathy would not know of the sexual mechanics she spoke of unless she had been subject to the alleged abuse. That the defendant expands on his arguments on appeal and employs language of "burden shifting" does not alter the fact that he raised at trial the grounds asserted on appeal.

*monwealth* v. *Shelley*, 374 Mass. 466, 471 (1978), *S.C.*, 381 Mass. 340 (1980). Cf. *Commonwealth* v. *Scheffer*, 43 Mass. App. Ct. 398, 401 (1997) ("the [sexual innocence inference] might loom less large in a case where there was anatomical or percipient witness evidence"). The improper argument served to bolster the credibility of Cathy, and "it is at least plausible that the jury were influenced by the Commonwealth's unsupported argument," *Commonwealth* v. *Hrabak, supra* at 657, that the only possible source of Cathy's sexual knowledge was her father's abuse. We are unable to say that we are assured that the improper remark had little or no effect on the jury's deliberations. "Where it cannot be said with assurance that the improper closing argument could not have influenced the jury to convict, the judgment of conviction cannot be preserved." *Commonwealth* v. *Kelly, supra* at 272.

   b. *Comments on witness credibility.* The defendant argues that the prosecutor improperly contrasted Cathy's lack of motive to lie with the defendant's motive to lie. The prosecutor argued that Cathy was credible simply because she testified at trial, that she had "no motive to lie about what her father did . . . nothing to gain by coming in this courtroom and telling you something that wasn't true." After further statements in this vein, the argument continued: "The defendant has a stake in the outcome of this case. The defendant has a motive to lie. . . . Think about who has a motive . . . to not tell you the truth, who has a stake in the outcome of this case."

   The defendant objected to this segment of the argument. The judge agreed that instruction was necessary so that the jury would not draw an inference favorable to the witness simply because she testified. In her instructions to the jury the judge stated:

> "I want to caution you . . . that the fact that a complaining witness has come into court and testified before you does not entitle that witness to any greater credibility. And in fact, the mere fact that somebody has come into court to testify does not mean that their testimony is entitled to be believed by you because of the mere fact that they showed up in court and testified. *If you*

*have been invited in the argument of counsel to make such an evaluation of a witness's testimony, I instruct you that you are to disregard that."* (emphasis added.)

At the conclusion of the charge, the defendant stated that he had no objection to the instructions.

Objection made at the conclusion of the prosecutor's argument normally preserves the defendant's right of appeal. See *Commonwealth* v. *Cancel*, 394 Mass. 567, 574 (1985). Here, however, where the objection to the closing argument was followed by focused, particularized instructions, the circumstances have been altered. Defense counsel acquiesced in the curative instruction and specifically indicated he was satisfied. Had he stated otherwise, the judge may have indulged his further objection; as matters stood, the judge could not know that the defendant considered the curative instruction inadequate, and had no opportunity to clarify further if necessary. Accordingly, we must determine whether any error created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Grandison*, 433 Mass. 135, 141-142 (2001).

A prosecutor may marshal the evidence in closing argument, and, in doing so, may urge the jury to believe the government witnesses and disbelieve those testifying for the defendant. See *Commonwealth* v. *Shea*, 401 Mass. 731, 738-739 (1988) (not improper to argue that "only the defendant possessed a motive to lie"). Thus, there was no impropriety in arguing that there was reason to disbelieve the defendant.

The remark that Cathy was presumably credible simply because she testified in court stands on different footing. "Telling the jury that the victims have no reason to lie is over the line of permissible advocacy . . . ." *Commonwealth* v. *Riberio*, 49 Mass. App. Ct. 7, 10 (2000). Cf. *Commonwealth* v. *Hollie*, 47 Mass. App. Ct. 538, 540 (1999) ("troubling" argument that "implicitly suggested that [robbery victim] would not subject himself to the ordeal of a trial unless it was very important for him to see the defendant brought to justice"). When the defendant objected to this argument, the judge recognized the impropriety and carefully crafted her instructions to address the improper remark. She specifically referred to the prosecutor's

challenged statements and admonished the jury to ignore counsel's suggestion that a witness's "testimony is entitled to be believed by you because of the mere fact that they showed up in court and testified." We agree with the Appeals Court that, as to this issue, "the judge's emphatic instruction was sufficient to cure" any improper statement, *Commonwealth* v. *Beaudry, supra* at 502, particularly when measured against the standard of a substantial risk of a miscarriage of justice.

The judgments are reversed, the verdicts set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*