COMMONWEALTH *vs.* ANGEL RAMOS.

No. 08-P-376.

Middlesex. January 8, 2009. - March 13, 2009.

Present: GREEN, BROWN, & VUONO, JJ.

*Assault with Intent to Rape. Indecent Assault and Battery. Practice, Criminal,* Argument by prosecutor.

At the trial of indictments charging assault with intent to rape a child and indecent assault and battery on a person over the age of fourteen, the prosecutor, in closing argument, improperly sought to bolster the credibility of the complainant by virtue of her willingness to come into court and testify; moreover, because the case rested entirely on the credibility of the complaining witness, this court could not say with assurance that the improper closing argument could not have influenced the jury, and therefore reversed the judgments of conviction. [826-827]

INDICTMENTS found and returned in the Superior Court Department on December 18, 2003.

The cases were tried before *S. Jane Haggerty,* J.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

GREEN, J. Among the claims of error raised in the defendant's appeal from his convictions on charges of assault with intent to rape a child and indecent assault and battery on a person over the age of fourteen, the defendant contends that the prosecutor's closing argument was improper. We agree and reverse the convictions.

*Background.* At the time of the incident giving rise to the charges, the complainant was a fifteen year old high school student. The testimony at trial described the following events. The complainant made the defendant's acquaintance while stand-

ing at a bus stop on her daily trip to school; the defendant would pull up to the bus stop in his car and make small talk with her. Eventually, the defendant suggested that she should skip school some day to "hang out" with him at a mall. She agreed to do so, and on the morning the two had set for their outing, the defendant picked her up in his car.[1] After the complainant got into the defendant's car, the defendant informed her that they needed to stop at his cousin's house before proceeding to the mall, to allow him to change his clothes after work. The two entered an apartment building, climbed a flight of stairs, and entered an apartment. Once in the apartment, the defendant turned on the television, and the complainant sat on the bed watching television while the defendant went into the bathroom. When the defendant emerged from the bathroom, he sat next to the complainant on the bed. After a time, the defendant stood up, pulled down his pants, and pulled the complainant's head toward his penis. As the assault continued, the defendant held the complainant down, kissed her on the mouth, touched her breasts, and pulled her underwear down to her thighs. The complainant protested, but the defendant persisted in his advances. The complainant then told the defendant that she had her menstrual period, and directed his attention to a sanitary pad. The defendant slowed down, and eventually suspended, his assault. The defendant thereafter drove the complainant back to school.

The defense at trial was that the complainant had lied about the sexual assault, suggesting that, though the two had gone to the apartment and kissed, the complainant had done so willingly and that the alleged sexual assault never occurred. In support of that strategy, the defense sought to impeach the complainant's credibility by pointing to inconsistencies between her trial testimony and prior statements she had made.

In his closing argument, the prosecutor responded to the defendant's challenge to the complainant's credibility. Among other observations offered in support of the complainant's credibility, the prosecutor asked the jury to consider why she would "come in almost four years later and say to a group of complete strangers, 'I was sexually assaulted. I had my period. I was wearing a pad.' Why do that? What does she get from that? . . . What mo-

---

[1]The complainant first reported to school and attended her first class, so that her absence would not trigger a report to her mother.

tive to lie or fabricate does [she] have?" Upon completion of the prosecutor's closing, defense counsel objected to the prosecutor's argument that the complainant had no motive to lie. The trial judge overruled the objection.

*Discussion.* "A prosecutor may marshal the evidence in closing argument, and, in doing so, may urge the jury to believe the government witnesses and disbelieve those testifying for the defendant." *Commonwealth* v. *Beaudry*, 445 Mass. 577, 587 (2005). "[T]here is no categorical prohibition against suggestion by a prosecutor that a prosecution witness has no motive to lie." *Commonwealth* v. *Helberg, ante* 175, 179 (2008). "A prosecutor may not, however, suggest to the jury that a victim's testimony is entitled to greater credibility merely by virtue of her willingness to come into court to testify." *Ibid.* See *Commonwealth* v. *Beaudry, supra* at 586-587. See also *Commonwealth* v. *Riberio*, 49 Mass. App. Ct. 7, 10 (2000). Cf. *Commonwealth* v. *Hollie*, 47 Mass. App. Ct. 538, 540 (1999).

The prosecutor's argument in the present case committed precisely the error against which the court cautioned in *Beaudry*.[2] By alluding to conjectured embarrassment experienced by a young woman in coming before a group of strangers to describe a sexual assault, including her menstruation and use of a sanitary pad, the prosecutor sought to bolster the credibility of the complainant by virtue of her willingness, despite such a burden, to come into court and testify. Unlike the circumstances in *Commonwealth* v. *Beaudry, supra*, the error was preserved by defense objection.[3] In a case such as the present one, which rested entirely on the cred-

---

[2]We reiterate the familiar refrain: "Advance preparation would eliminate from our consideration most aspects of closing arguments constantly being urged as improper." *Commonwealth* v. *Smith*, 387 Mass. 900, 903 (1983), quoting from *Commonwealth* v. *Haas*, 373 Mass. 545, 557 (1977).

[3]Before trial, the defense moved in limine to preclude the Commonwealth from commenting on the complainant's motive to lie. The trial judge reserved ruling on the defendant's motion. Following the Commonwealth's closing argument, the defendant objected to the Commonwealth's argument on that basis, reminding the judge that she had reserved her ruling on the motion in limine. The judge overruled the objection, commenting that she did not find anything objectionable in the prosecutor's closing. We reject the Commonwealth's suggestion that the defendant's claim of error is unpreserved because the defendant did not thereafter request a curative instruction. Contrast *Commonwealth* v. *Beaudry, supra* at 586-587 (objection to closing argument sustained, and curative instruction administered). We agree with the defendant

ibility of the complaining witness, we "cannot [say] with assurance that the improper closing argument could not have influenced the jury to convict." *Commonwealth* v. *Beaudry, supra* at 586, quoting from *Commonwealth* v. *Kelly,* 417 Mass. 266, 272 (1994). Accordingly, we are constrained to reverse the judgments of conviction. *Commonwealth* v. *Beaudry, supra.*[4]

*So ordered.*

---

that the judge's standard instruction, to the effect that "arguments are not evidence," was inadequate to neutralize the prejudicial effects of the prosecutor's improper remarks. See *Commonwealth* v. *Shelley,* 374 Mass. 466, 471 (1978), *S.C.,* 381 Mass. 340 (1980); *Commonwealth* v. *Fredette,* 56 Mass. App. Ct. 253, 264 (2002).

[4]Our view of the case obviates any need to address the defendant's remaining claims of error, as they are unlikely to recur at any retrial. The defendant's first claim concerns the admission of reports of the alleged assault that the complainant made to other persons. See *Commonwealth* v. *King,* 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006). As to one such report, the Commonwealth concedes error in the admission of the first complaint over defense objection (because the first complaint witness was unavailable to testify), but contends that the error was harmless; as to the other two reports, the Commonwealth suggests that the absence of objection reflected a defense strategy to impeach the complainant with inconsistencies. The defendant's remaining claim is directed to the exclusion of evidence that the complainant faced pending charges on an unrelated matter at the time of trial. Those charges have since been resolved.