After a trial conducted under G. L. c. 123A, § 9, the jury found that the petitioner, Raymond Edwards, is a sexually dangerous person (SDP). Judgment accordingly entered that he remain at the treatment center at Bridgewater for an indeterminate period of time. On appeal, the petitioner argues that certain statements made by the prosecutor during closing argument require reversal. We affirm.
Background. In 1983, the petitioner was committed to the Bridgewater treatment center as a SDP pursuant to G. L. c. 123A. In 2011, the petitioner filed a G. L. c. 123A, § 9, petition seeking his release. Section 9 allows a person who has been committed as a SDP to file a petition in the Superior Court every twelve months for a redetermination, by way of trial, of whether he remains sexually dangerous. See G. L. c. 123A, § 9. At the trial, the Commonwealth presented three expert witnesses, all of whom testified that the petitioner remained sexually dangerous. The petitioner called one expert witness and several supporting witnesses. The jury heard evidence that during his seventeen-year commitment, the petitioner had numerous problematic incidents with female staff, and one female therapist in particular. There was evidence that from 1984 to 2002 the petitioner engaged in a pattern of escalating physical, emotional, and sexual harassment of that therapist. This harassment included inappropriate comments, gestures, and touching, as well as invasions of her privacy[2] and numerous threats against her and her family.
During the Commonwealth's closing argument, while discussing the petitioner's history with the female therapist, the prosecutor asked the jury to "[t]hink about your life, and 17 years of it being dealing with Mr. Edwards." The defendant objected to this statement. After conclusion of the Commonwealth's closing and a sidebar conference about the objection, the judge instructed the jury to disregard any invitation to "imagine yourself as being somehow related to any of the people or the events in this ... case." The petitioner made no other objections during the Commonwealth's closing argument and did not request additional curative instructions.
Discussion. When a defendant objects to a prosecutor's statements made during a closing argument, we consider first whether it was error for the prosecutor to make the challenged statement and, if so, whether the defendant was thereby prejudiced. See Commonwealth v. Rosario, 430 Mass. 505, 515 (1999). An error is not prejudicial if "the conviction is sure that the error did not influence the jury, or had but very slight effect." Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994), quoting from Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 445 (1983). Here, the petitioner argues that the statement "[t]hink about your life, and 17 years of it being dealing with Mr. Edwards" constituted prejudicial error.
Closing arguments must be based on the evidence and the fair inferences from the evidence. Commonwealth v. Pettie, 363 Mass. 836, 840 (1973). See Mass. G. Evid. § 1113(b)(2) (2017). Arguments may contain "enthusiastic rhetoric, strong advocacy, and excusable hyperbole." Commonwealth v. Costa, 414 Mass. 618, 629 (1993). However, counsel may not invite the jury to step in the shoes of a party, witness, or victim. See Commonwealth v. Bizanowicz, 459 Mass. 400, 420 (2011). See also Commonwealth v. Valentin, 420 Mass. 263, 274 (1995). Remarks made during closing argument should be considered within the context of the entire argument, the evidence presented during the trial, and the judge's instructions to the jury. See Commonwealth v. Barros, 425 Mass. 572, 581-582 (1997).
In the challenged portion of the prosecutor's argument, she asked the jurors to consider spending seventeen years of their lives dealing with a person like the petitioner. It appears that the remark was intended by the prosecutor to highlight evidence of the petitioner's lengthy history of sexual misconduct, and to buttress her argument that the petitioner's sexually dangerous behavior did not "magically" disappear overnight. The prosecutor's suggestion that the jurors put themselves in the shoes of the therapist should not have been made. Commonwealth v. Finstein, 426 Mass. 200, 205 n.1 (1997). However, in light of all the evidence presented at trial and the judge's curative instruction and other instructions to the jury, we discern no reversible error.
The jury heard evidence that the petitioner had engaged in a decades-long pattern of sexual misconduct that continued despite incarceration, civil commitment to a treatment center, years of therapy, and other attempts to manage his behavior. All three of the Commonwealth's expert witnesses opined that the petitioner remained sexually dangerous. The experts also agreed that the petitioner suffered from antisocial personality disorder and possessed a number of risk factors associated with an increased risk of sexual misconduct. Finally, the jury heard testimony that the petitioner was not attempting to address the totality of his issues during treatment, and showed little ability to apply the treatment concepts learned in therapy to his own behavior. Indeed, the petitioner's own expert came to some of these same conclusions.
If a prosecutor makes an improper statement during closing argument, a judge may give curative instructions to the jury. See Commonwealth v. Beaudry, 445 Mass. 577, 587 (2005). Here, the judge gave a curative instruction[3] after the petitioner's objection, and the petitioner did not seek any additional instructions from the judge. If, in the petitioner's opinion, the judge's curative instructions did not adequately cure the violation, it was the petitioner's duty to seek further instructions. See ibid. Lack of any additional objection by the petitioner signals that he believed the curative instruction to be satisfactory. See ibid.; Commonwealth v. Galvin, 27 Mass. App. Ct. 150, 154 (1989). In these circumstances, our review is pursuant to the miscarriage of justice standard. See Beaudry, supra, and Galvin, supra. At the outset of the trial and prior to opening statements, the judge advised the jury that opening statements and closing arguments are not evidence, and during the jury instructions, stated that the only evidence they were to consider was the witnesses' testimony and exhibits admitted.[4] The jury are presumed to follow the judge's instructions. Commonwealth v. Watkins, 425 Mass. 830, 840 (1997). There was no substantial risk of a miscarriage of justice.
For the first time on appeal, the petitioner alleges that the prosecutor made other improper statements during her closing argument.[5] The petitioner did not object to these statements at trial. We address the issue to determine whether the prosecutor's remarks created a substantial risk of a miscarriage of justice. See Commonwealth v. George, 477 Mass. 331, 335 n.3 (2017).
Considering the entirety of the Commonwealth's case, the prosecutor's remarks did not result in error, much less one that created a substantial risk of miscarriage of justice. The remarks of which the petitioner now complains were either fair comments on the evidence, see Commonwealth v. Bishop, 461 Mass. 586, 589 (2012), a comment on the potential bias of the petitioner's expert witness, ibid., or were within the scope of allowable argument. In addition, the petitioner's lack of objection provides "some indication that the tone [and] manner ... of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." Fletcher, supra at 172, quoting from Commonwealth v. Sanchez, 405 Mass. 369, 375 (1989).
Furthermore, the Commonwealth's case against the petitioner was strong. As discussed above, the jury heard testimony from multiple witnesses, including several experts and people who had treated the petitioner, that allowed them to conclude beyond a reasonable doubt that the petitioner remained sexually dangerous. Therefore, in light of the totality of the evidence presented at trial and the judge's instructions, we conclude that there was no substantial risk of a miscarriage of justice created by any of the prosecutor's challenged statements.
Judgment affirmed.

The petitioner obtained the therapist's home address and telephone number, and the address and telephone number of her mother. He sent sexually inappropriate letters to both the therapist and her mother and attempted to contact her mother via telephone.

The trial judge instructed the jury that:
"closing arguments are when counsel generally has their most dramatic and ... sometimes things come out obviously better not ... said, and so to the extent that you felt yourself being invited to imagine yourself as being somehow related to any of the people or the events in this ... case, you ... should dismiss that, and not let that become a part of your deliberations."

The judge instructed the jury to "decide what the facts are solely from the evidence admitted in this case. The evidence consists of the testimony of witnesses as you recall it, any documents or other things that were received into evidence as exhibits."

In particular, the petitioner assigns error to the following portions of the prosecutor's closing argument: the purposes of civil commitment that the jury should consider ("rehabilitation" and "protection of the public"); the use of the victims' names; whether the petitioner's sister could effectively support him despite not knowing him well; and the petitioner seeking to "destroy" a victim. The prosecutor also attacked the credibility of the petitioner's expert witness by stating that "Dr. Brown would have you believe, well, you know, [the] treatment center probably acted a little too quickly, they should have watched him to see what he would do next. Does that make sense? Perhaps if Dr. Brown were a female therapist, he wouldn't say that."