NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-145                                                 Appeals Court

COMMONWEALTH  vs.  JUSTIN HAMEL.

No. 16-P-145.

Bristol.     March 13, 2017. - April 13, 2017.

Present:  Green, Wolohojian, & Sullivan, JJ.


Indecent Assault and Battery.  Minor.  Evidence, Medical record,
     Credibility of witness.  Witness, Child, Credibility.
     Practice, Criminal, Argument by prosecutor.  Child Abuse.



     Complaints received and sworn to in the jury session of the
Fall River Division of the District Court Department on November
21, 2011, and May 31, 2012.

     After consolidation, the cases were tried before Gilbert J.
Nadeau, Jr., J.


     Laura Mannion Banwarth for the defendant.
     Tara L. Johnston, Assistant District Attorney, for the
Commonwealth.


     GREEN, J.  On appeal from his convictions on two counts of

indecent assault and battery on a child under the age of

fourteen, the defendant assigns error to the admission, over

objection, of medical records describing diagnosis and treatment

of the child for dermatitis on his penis, without expert testimony establishing a causal connection between the alleged assault and the described skin condition. The defendant also observes that the trial prosecutor's closing improperly suggested that the jury should consider the child to be credible, by reason of his willingness to testify in court to the alleged assault. See Commonwealth v. Beaudry, 445 Mass. 577, 586 (2005); Commonwealth v. Ramos, 73 Mass. App. Ct. 824, 825-826 (2009). We agree that a new trial is warranted, and reverse the judgments.

Background. In September, 2011, the child (then twelve years old) moved into a new house with his family. The defendant (then thirty-one years old) often stayed in the family home, and the child and defendant spent a lot of time together. The child and the defendant went to the beach, played video games, and watched television together. The child testified that he had a good relationship with the defendant, and liked him.

One day, while the child and the defendant were sitting or lying on his bed watching television, the defendant grabbed the child's penis with his hand and moved his hand up and down until "wet stuff came out." The child testified that something similar happened with the defendant on ten to twenty other occasions during the time the defendant stayed with his family.

The child also testified that the defendant kissed him on the lips between five and ten times. On one of those occasions, the child's step-mother saw the defendant kiss the child; thereafter, the child's step-mother and mother took him to speak to a woman at a child advocacy center, where the child reported the kiss but did not mention that the defendant had touched the child's penis.[1] At some later point, the child returned to the child advocacy center and reported to the same woman that the defendant had been touching his penis. When the woman asked the child why he had not reported that touching before, the child explained that he liked the defendant and didn't want to get him in trouble.

One day in September of 2011, after the defendant had been staying with the child's family for more than two weeks, the child began to experience pain in his penis. The child's mother took him to the doctor, where an examination revealed that the skin of his penis was red and irritated. The doctor prescribed a cream, which resolved the condition. The child had never experienced a similar condition on his penis before September of 2011.

Discussion. Medical records. On the first day of trial, the prosecutor informed the judge that the Commonwealth intended

---

[1] In response to a direct question from his step-mother, the child denied that the defendant had ever touched his penis.

to introduce medical records showing that the child sought treatment on September 26, 2011, for "irritation in the penis area," explaining that the records were relevant because the acts of abuse were alleged to have occurred during the month preceding the child's treatment for dermatitis. The defendant objected to admission of the records, on the ground that there was nothing in the records suggesting a causal link between the alleged abuse and the dermatitis diagnosis.[2] The judge advised that he would reserve his ruling on the admissibility of the records until after he heard the child's testimony. On the second day of trial, the defendant returned to the topic of the medical records, advising the judge that he noticed that the diagnosis expressed in the records was for "irritant dermatitis," a condition that (according to trial counsel's review of the Internet encyclopedia Wikipedia) is caused by chemical irritants rather than touching of the type the child alleged the defendant to have done. Following the child's testimony, the Commonwealth moved to admit the medical records and, over the defendant's objection, the judge admitted the

---

[2] The defendant further observed that privileged records from the child advocacy center social worker (which were not admissible) included notes recounting the child's mother's report that, according to the medical staff who treated the child, the skin irritation evident on the child's penis was "due to not washing soap entirely off."

records in evidence.[3]  Because the defendant objected, we "review any error in the admission of the medical records under the prejudicial error standard."  Commonwealth v. Cole, 473 Mass. 317, 321 (2015).

"Expert testimony is necessary where proof of medical causation lies outside the ken of lay jurors."  Pitts v. Wingate at Brighton, Inc., 82 Mass. App. Ct. 285, 289 (2012).  "However, where a determination of causation lies within 'general human knowledge and experience,' expert testimony is not required." Ibid., quoting from Bailey v. Cataldo Ambulance Serv., Inc., 64 Mass. App. Ct. 228, 236 n.6 (2005).  The question, then, is whether the causes of dermatitis generally, or "irritant dermatitis" more particularly, is sufficiently within the general knowledge and experience of lay jurors to permit them to draw a causal connection between the alleged abuse by the defendant and the condition experienced by the child without engaging in "speculation or conjecture."  Commonwealth v. Scott, 464 Mass. 355, 362 (2013).  We conclude they are not.

The alleged abuse involved the vigorous rubbing of the child's penis with the defendant's hand.  While it is certainly possible that such contact could produce some irritation of the

---

[3] In response to trial counsel's observation that "irritant dermatitis" is caused by chemical irritants, the judge suggested that the defendant would be free to introduce evidence of other possible causes for the child's skin condition.

skin surface of more than temporary duration, it seems far from general knowledge and experience that it would, or that it would produce a condition called "dermatitis" requiring treatment. More to the point, without evidence of other potential causes of such a condition, or the likelihood that the condition in the particular form experienced by the child would result from rubbing, a conclusion that the child's dermatitis was caused by the alleged touching in the present case rests on little more than speculation or conjecture. See Commonwealth v. Kirkpatrick, 423 Mass. 436, 447-448, cert. denied, 519 U.S. 1015 (1996), overruled on other grounds, Commonwealth v. King, 445 Mass. 217 (2005).

"In the Kirkpatrick case, a defendant charged with sexual abuse of a child sought to introduce medical records showing that, during the relevant period, he was treated for two sexually transmitted infections, while the victim tested negative for the same infections. [Kirkpatrick, supra at 448.] [The Supreme Judicial Court] determined that the records were excluded properly because no medical testimony was introduced and, in the absence of such expert testimony, the records would have required speculation both as to the likelihood that the infections would have been transmitted and as to the reliability of the tests on a child. Id. at 447-448. Cf. Buck's Case, 342 Mass. 766, 769 (1961) (where causal connection between

inhalation of formaldehyde and death was beyond 'common knowledge and experience of the ordinary layman,' medical testimony was required)." Commonwealth v. Scott, supra at 362-363. On the topic of causation, compare cases such as Pitts v. Wingate at Brighton, Inc., supra at 289-290 (plaintiff suffered broken bones after fall to floor), and Bennett v. Winthrop Community Hosp., 21 Mass App. Ct. 979, 980-982 (1986) (with regard to the lost tooth and cut chin plaintiff sustained in fall from gurney, the court observed that "[t]he fact of injury consequent upon a fall is incontestable"), with Weinberg v. Massachusetts Bay Transp. Authy., 348 Mass. 669, 671 (1965)("Whether a fracture of the ankle could give rise to such consequences . . . as varicose veins and shortness of breath cannot be said to be a matter of common knowledge").

The admission of the child's medical records, without evidence supporting a causal link between the diagnosed condition and the defendant's alleged abuse, was error. "An error is nonprejudicial only '[i]f . . . the conviction is sure that the error did not influence the jury, or had but very slight effect. . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.' Commonwealth v.

Peruzzi, 15 Mass. App. Ct. 437, 445 (1983), quoting Kotteakos v.
United States, 328 U.S. 750, 764-765 (1946)." Commonwealth v.
Flebotte, 417 Mass. 348, 353 (1994). We can have no such
assurance in the present case. As is typical in such matters,
the present case relied principally on the credibility of the
child. The suggestion that the physical condition experienced
by the child was the result of the abuse he described could
serve as powerful forensic corroboration of the child's
testimony. Indeed, the prosecutor pressed that point forcefully
during his closing argument. We agree with the defendant that
the erroneously admitted medical records caused him prejudice.

Improper closing. Our conclusion that the defendant is
entitled to a new trial is buttressed by the defendant's second
claim of error, that the prosecutor engaged in improper closing
argument. As the Commonwealth concedes, it was improper for the
prosecutor to suggest in his closing that the child was credible
by virtue of his willingness to come into court and testify.[4]
See Commonwealth v. Beaudry, 445 Mass. at 586; Commonwealth v.

---

[4] The defense theory was that the child fabricated the
allegations of abuse to avoid punishment after his step-mother
caught him smoking a cigarette. In response, the Commonwealth
argued: "Why would he put himself through what he did
yesterday, for smoking a cigarette?" and "I think the most
important thing that I want to leave you with is about the
motivation of a young, 12-year-old boy and what his motivation
is or would have been to make this up, to drag this on for two
years, to come here and testify before you. It's a difficult
thing for anybody, but most certainly a 14-year-old."

Ramos, 73 Mass. App. Ct. at 825-826; Mass. G. Evid.
§ 1113(b)(3)(A) (2017). As we have observed, the Commonwealth's
case rested principally on the credibility of the child, except
to the extent that the child's allegations of abuse were
corroborated by the suggestion that his dermatitis served as
tangible proof of the alleged abuse. Though the defendant did
not object at trial to the prosecutor's closing, when the
improper argument is weighed together with the prejudicial
effect of the erroneously admitted medical records we are left
with no doubt that the judgments cannot stand.

Conclusion. The judgments are reversed, and the verdicts
set aside. The matter is remanded to the District Court for
further proceedings consistent with this opinion.

So ordered.