COMMONWEALTH *VS.* FRITZ OLMANDE.

No. 12-P-1638.

Suffolk. April 5, 2013. - September 12, 2013.

Present: VUONO, CARHART, & AGNES, JJ.

*Rape. Indecent Assault and Battery. Practice, Criminal,* Argument by prosecutor, Instructions to jury, Lesser included offense.

At a rape trial, although the prosecutor, in closing argument, improperly invited the jury into the victim's position and attempted to arouse juror sympathy, and further suggested that the jury should believe the victim merely because she testified, no substantial risk of a miscarriage of justice arose where the trial counsel failed to alert the judge to the error asserted on appeal; where the remarks, while affecting one central issue, did not go to the very heart of the case and did not strike at the defendant's sole defense; where the judge instructed the jury three times within the span of a trial that lasted less than three days that closing arguments are not evidence; and where the Commonwealth's evidence was strong and the remarks, considered in context, occurred in the course of an otherwise unobjectionable closing and were made to a large extent in response to defense counsel's summation. [233-238] AGNES, J., concurring in the result.

At a rape trial, sufficient evidence of penetration was presented to withstand a motion for a required finding of not guilty. [238]

At a rape trial, the judge did not err in declining, sua sponte, to instruct the jury on the lesser included offense of indecent assault and battery, where there was no evidence that sufficiently disputed the element of penetration. [238-239]

INDICTMENTS found and returned in the Superior Court Department on November 18, 2009.

The cases were tried before *Frank M. Gaziano,* J.

*Adriana Contartese* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

CARHART, J. After a Superior Court jury trial, the defendant was convicted of four counts of rape of a child and one count of indecent assault and battery on a child under the age of

fourteen years.[1] On appeal, he alleges that the prosecutor's closing argument deprived him of a fair trial; that the evidence was insufficient to support a conviction of one of the charges of rape of a child; and that the judge erred by not instructing the jury, sua sponte, on the lesser included offense of indecent assault and battery in connection with that rape of a child charge. We affirm.

*Background.* The victim in this case, whom we shall call Jenna,[2] was eighteen years old at the time of trial. The defendant was the boyfriend of Jenna's grandmother, with whom Jenna spent much of her childhood. At trial, Jenna testified that the defendant sexually assaulted her on numerous occasions and in various locations, from the time she was four years old until she was eight or nine years old.

One of those locations was the home of Jenna's aunt. On one occasion while Jenna was visiting, her aunt noticed that Jenna's underwear appeared inconsistent with what a child's underwear of Jenna's age should look like; rather, her aunt thought they appeared more consistent with the underwear of a sexually active adult.[3] When asked by her aunt if anyone was "messing with her," Jenna stated, "No."

Jenna testified that she disclosed the sexual assaults to her best friend, Teresa,[4] when Jenna was in sixth grade. Although she could not recall the exact words she used to describe the

---

[1] The defendant was indicted on seven counts of rape of a child and four counts of indecent assault and battery on a child under the age of fourteen years. Prior to trial, the Commonwealth filed a nolle prosequi on one rape charge. After the evidence was closed, the judge allowed a motion for required findings of not guilty as to two other rape charges and three indecent assault and battery charges.

[2] A pseudonym.

[3] Jenna's aunt testified as follows: "[While giving Jenna a bath, I noticed that Jenna's] underwear were just not what underwear for a child should look like. So I brought the underwear to my mom . . . . And she was like, 'Wow, these underwear are really bad.' And we're like, 'Yeah, they're like a grown woman's underwear, they don't look like a child's underwear.' " When asked by the prosecutor specifically why she thought that, the aunt testified, "The discharge . . . . The stuff that was in the underwear were just something that would remind me of someone, I'm a grown woman, I'm sexually active, and her underwear reminded me of something that my underwear would look like after, you know, something like that. . . . [My daughter's underwear] didn't look anything like that ever."

[4] A pseudonym.

assaults, Jenna testified that she was "feeling some type of weight at the time and . . . needed somebody to talk to." Jenna testified that she told Teresa the defendant "was having sex with [her] and . . . touching [her] . . . and [that she] was mad because he took [her] virginity."

Teresa testified as a first complaint witness. She stated that Jenna told her that a close family friend had raped her and that he had touched her chest and her vagina. Teresa further testified that Jenna told her that the assaults had happened on more than one occasion.

The parties stipulated that when Jenna was thirteen years old she underwent a gynecological examination that did not reveal evidence of a sexual assault. A sexual assault nurse examiner, testifying as an expert, stated that it would be unlikely that a child rape victim would show discernible medical evidence of penetration after the passage of one year.

*Discussion.* 1. *Closing argument.* The defendant alleges that the prosecutor's closing argument was improper and that the error requires a new trial. We begin our analysis by determining whether there was error in the prosecutor's argument. If so, we must determine whether reversal is required by considering "[a] whether the defendant seasonably objected; [b] whether the error was limited to collateral issues or went to the heart of the case; [c] what specific or general instructions the judge gave the jury which may have mitigated the mistake; and [d] whether the error, in the circumstances, possibly made a difference in the jury's conclusions." *Commonwealth* v. *Kater*, 432 Mass. 404, 422-423 (2000), citing *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987).

In the present case, the defendant challenges the following remarks made by the prosecutor in her closing argument:

> "Do you think it was easy for [Jenna] to come in here and talk about those things? You saw how embarrassing and humiliating it was for her to talk about that stuff. I want you to think about in your own lives a sexual experience or a sexual encounter that you've had with a consenting adult. Think about that, picture it. And then imagine somebody asking you to talk about that, especially the

intimate details of it, to a group of strangers that you don't even know in a huge room and to be asked questions in a very intimate way about that stuff. It's really hard to talk about, and I ask you to think about that.

"Because this is a girl who is only eighteen years old. And why would an eighteen year old girl, what would be the motive for her to come in here and talk about events that are extremely humiliating in front of a room of strangers? I suggest to you there is only one thing that would motivate her to do that, and that's the truth, because she's telling the truth."

Prosecutors may "[argue] forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence." *Kozec*, 399 Mass. at 516. Here, however, the defendant alleges the prosecutor, in effect, instructed the jury to place themselves in Jenna's shoes by asking them to "imagine" speaking about the incident of a sexual assault "to a group of strangers." We agree. It is improper for the prosecutor to invite the jury into the victim's position and to attempt to arouse juror sympathy. *Commonwealth* v. *Grinkley*, 75 Mass. App. Ct. 798, 808-809 (2009). Additionally, the defendant contends that the prosecutor impermissibly argued that "only one thing . . . would motivate [Jenna] to [testify] . . . the truth." While a prosecutor may argue that the jury should believe a witness based upon evidence presented at trial, a prosecutor cannot suggest the jury should believe a witness merely because the witness testified. *Commonwealth* v. *Ramos*, 73 Mass. App. Ct. 824, 826 (2009). Therefore, the remark was likewise improper.

A. *Error was unpreserved.* After closing arguments, there was a sidebar conference in which the following exchange between defense counsel and the judge occurred.

DEFENSE COUNSEL: "The other thing would be vouching for the credibility of certain witnesses. I don't think that was excessive so I'm not going to jump up and down too much about that. That's about all I have, Judge."

JUDGE: "I didn't find any of the argument to be beyond the bounds of proper argument."

DEFENSE COUNSEL: "Oh, I'm not suggesting that it was, Judge."

JUDGE: "No, I just want to make a record that I didn't find any of the argument to be improper."

The defendant argues that his trial counsel's allusion to the prosecutor's "vouching for the credibility of certain witnesses" sufficiently notified the judge that the defendant objected to the aforementioned remarks. We disagree. A party must "make[] known to the court the action which [the party] desires the court to take or [the party's] objection to the action of the court." Mass.R.Crim.P. 22, 378 Mass. 892 (1979). "[T]rial counsel need not achieve perfection in identifying every impropriety . . . so long as the objection alerts the judge to the grounds on which trial counsel objected to the prosecutor's closing argument." *Commonwealth* v. *Hollie*, 47 Mass. App. Ct. 538, 541 n.3 (1999).

Here, after the judge stated that he viewed the prosecutor's remarks as within the bounds of proper argument, defense counsel responded by making it clear that he was "not suggesting" the argument was improper. Given this response, we conclude that trial counsel failed to alert the judge to the error now asserted on appeal. See *Commonwealth* v. *Ortiz*, 50 Mass. App. Ct. 304, 309-310 (2000). Because there was no objection to the prosecutor's closing argument, we review to determine whether the error created a substantial risk of a miscarriage of justice.[5] *Id.* at 310.

B. *Significance of error.* While the prosecutor's improper remarks touched upon a central issue in the case, namely Jenna's credibility, see *Commonwealth* v. *Lewis*, 465 Mass. 119, 131 (2013), the jury's verdict likely also was based on the testimony provided by Jenna's aunt, who, as we noted, stated

---

[5]The absence of a proper objection makes this case similar to *Commonwealth* v. *Beaudry*, 445 Mass. 577, 586-588 (2005), in which no substantial risk of a miscarriage of justice arose where a prosecutor made a similar improper remark and defense counsel failed to object to the judge's curative instruction, and, thus, unlike *Ramos*, 73 Mass. App. Ct. at 826 n.3, in which the defendant was prejudiced by a prosecutor's similar improper remark that was objected to by defense counsel and which defense counsel had moved in limine to exclude, and we were compelled to reverse the judgments.

that on one occasion Jenna's underwear looked more like that of a sexually active adult than of a child.

The jury also had to consider whether the first complaint witness (Teresa) and Jenna's grandmother were credible. Thus, the remarks at issue, while affecting one central issue, did not go "to the very heart of the case" and did not strike "at the defendant's sole defense." *Commonwealth* v. *Shelley*, 374 Mass. 466, 471 (1978), *S.C.*, 381 Mass. 340 (1980). Contrast *Commonwealth* v. *Beaudry*, 445 Mass. 577, 585 (2005) ("verdicts rested solely on the jury's believing [the victim]"); *Ramos*, 73 Mass. App. Ct. at 826-827 (verdict "rested entirely on the credibility of the complaining witness").

C. *Judge's instructions.* Before trial commenced, the judge told the jury that "closing arguments are bookends. . . . [W]hat the attorneys say to you is not evidence in the case. Evidence comes exclusively from the testimony of the witnesses . . . . [A]ttorneys are not witnesses in the case. They weren't there, they themselves don't know what went on." Again, immediately before closing arguments, and as our cases and legal authorities advise, the judge reminded the jurors that closing arguments are not evidence.[6] And then, furthermore, after closing arguments concluded, the judge further instructed the jury:

> "You must determine the facts based solely and entirely upon the evidence you've seen and heard in this courtroom and nothing else. No bias, no prejudice, no fear, no favor. You are not to be swayed by personal likes or dislikes. Emotion or sympathy, passion or prejudice have no place in your deliberations."

Thus, during the span of a trial of less than three days, the

---

[6]The judge stated: "The next thing you will do is to hear the closing arguments of the attorneys. . . . What's important about the closing arguments of the lawyers is . . . that what they say to you is not evidence in the case. The evidence is closed. So the evidence came exclusively from what the witnesses said on the witness stand during direct or redirect or cross or recross examination, and also anything that was marked with an exhibit sticker. That's the evidence. So if the attorneys say something to you that differs from your memory, it's your memory of the evidence that controls, not the memory of the attorneys. So what they say to you will be helpful, but what they say to you is not evidence in this case and you cannot take it as evidence."

judge instructed the jury three times that closing arguments are not evidence. We presume, as we must, that the jury follow the judge's instructions and understand the argumentative, not factual, nature of closing arguments. See *Commonwealth* v. *Correia*, 65 Mass. App. Ct. 27, 37 n.8 (2005). In this instance, we commend the judge for his thoroughness, which mitigated the mistakes made by the prosecutor.

D. *No substantial risk of miscarriage of justice.* The Commonwealth's evidence was strong. Jenna testified at length and in detail about the sexual abuse. Her testimony was corroborated by Teresa, the first complaint witness, who testified in detail about Jenna's initial disclosure, and by the observations of her aunt, who saw the unusual "discharge" in Jenna's underwear.

Furthermore, considering the improper remarks in context, as we must, see *Lewis*, 465 Mass. at 132, we observe that they occurred in the course of an otherwise unobjectionable closing and they were made to a large extent in response to defense counsel's summation. In his closing argument, defense counsel focused heavily on Jenna's alleged lack of credibility, painting Jenna as a confused "young child who had a troubled life." By contrast, in her argument, which covered fourteen pages of trial transcript, the prosecutor focused heavily on evidence that corroborated Jenna's testimony.

In light of the strength of the Commonwealth's case, a lack of objection and an affirmative statement by defense counsel to the effect that the prosecutor's argument was proper, as well as the judge's instructions to the jury and that the errors were relatively brief in the context of the prosecutor's entire argument, we conclude that the errors were not so offensive as to create a substantial risk of a miscarriage of justice.

The experienced trial judge and the able defense counsel, sitting in a much better position than us, were able to witness the elocution and the impact of the argument. In this case, we cannot underestimate the "significance" that attaches to their perceptions of the argument, for "[i]t is not only 'a sign that what was said sounded less exciting at trial than appellate counsel now would have it seem,' . . . but it is also 'some indication that the tone[,] manner[, and substance] of the now challenged aspect of the prosecutor's argument were not unfairly prejudicial.' " *Com-*

*monwealth* v. *Leach*, 73 Mass. App. Ct. 758, 768 (2009) (citations omitted).

2. *Sufficiency of evidence.* The defendant also argues that there was insufficient evidence presented to support his conviction of rape of a child as relative to digital penetration. However, in this regard, Jenna testified as follows.

> JENNA: "He moved his hands down towards my vagina area."

> PROSECUTOR: "What part of your vagina did he touch with his hand?"

> JENNA: "My clitoris."

> PROSECUTOR: "And what did he do with his hand when he was touching your clitoris?"

> JENNA: "Moving in circular motions."

Viewing the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), Jenna's testimony that the defendant touched her clitoris is sufficient to withstand a motion for a required finding on this charge. See *Commonwealth* v. *Baldwin*, 24 Mass. App. Ct. 200, 204-205 (1987) ("Intrusion into the vagina itself is not required to make out the wrongful penetration"). See also *Commonwealth* v. *Moniz*, 43 Mass. App. Ct. 913, 914 (1997), and cases collected therein.

3. *Lesser included offense instruction.* Finally, the defendant argues that the reasonable inference of Jenna's testimony in regards to digital penetration is that she was clothed during the incident and, therefore, "there was no evidence that the touching was under her clothing." Thus, the defendant asserts that the judge erred in not instructing the jury, sua sponte, on the lesser included offense of indecent assault and battery.

"[A] judge must give a lesser included offense instruction if, on the evidence, there is a rational basis for acquitting the defendant of the greater offense and convicting him of the lesser included offense." *Commonwealth* v. *Thayer*, 35 Mass. App. Ct. 599, 602 (1993), *S.C.*, 418 Mass. 130 (1994). However,

"[e]ven when evidence is introduced that would justify conviction for a lesser included offense, the defendant is not entitled to an instruction thereupon unless the proof on the 'elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense.' " *Commonwealth* v. *Egerton*, 396 Mass. 499, 504 (1986) (citation omitted). "That evidence, in ordinary circumstances, cannot be the mere possibility that the jury might not credit a portion of the Commonwealth's evidence, which of course they are always free to do." *Commonwealth* v. *Donlan*, 436 Mass. 329, 337 (2002).

As we have noted, Jenna testified in detail that the defendant touched her clitoris. Although Jenna's recollection of the facts preceding this incident was inconsistent, her testimony that the defendant touched her clitoris never wavered. Thus, there was no evidence that sufficiently disputed the element of penetration. Therefore, we conclude there was no error by the judge not instructing the jury on a lesser included offense. See *id.* at 338.

*Judgments affirmed.*

AGNES, J. (concurring in the result). I agree with the majority that the defendant has not sustained his burden of establishing a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). I write separately because I think that there are several practical steps that trial judges could take to minimize the risks associated with improper closing arguments.

Many years ago, Supreme Judicial Court Chief Justice Hennessey suggested that the risk of error in closing argument would be minimized if, after the close of the evidence, counsel requested a hearing with the judge, out of the presence of the jury, to discuss what each has in mind to say in the closing argument. See *Commonwealth* v. *Earltop*, 372 Mass. 199, 206 (1977) (Hennessey, C.J., concurring). In my experience, excellent training is provided and the importance of adequate preparation is stressed by the Commonwealth's prosecutors and the

Committee for Public Counsel Services.[1] Nevertheless, each year, in a significant number of cases, appellate courts note that some aspects of the remarks made by counsel in closing argument were out of bounds (though in most cases not so far from the boundary line as to require a new trial).[2] In the spirit of Chief Justice Hennessey's observation, two suggestions have been developed as preventative measures that trial judges could employ to reduce the risk of error. See *United States* v. *Antonelli Fireworks Co.*, 155 F.2d 631, 662 (2d Cir.), cert. denied, 329 U.S. 742 (1946) (Frank, J., dissenting) ("A legal system is not what it says, but what it does").

A. *Guideline for lawyers.* In *Commonwealth* v. *Finstein*, 426 Mass. 200, 205 n.1 (1997), the Supreme Judicial Court described as "worthwhile" a series of guidelines about what to avoid in closing argument that an experienced and respected trial judge routinely conveyed to the prosecutor and defense counsel before the closing arguments. The guidelines are as follows:

> "In his closing argument, no counsel shall state any personal opinion. No 'I think,' 'I feel,' 'I believe.' No personal opinions concerning the credibility of witnesses. No counsel shall state any personal belief that implies personal knowledge as an attorney.
>
> "Counsel shall not argue inferences from matters that are not in evidence or that have been excluded.
>
> "Counsel shall not allude to the appellate processes.
>
> "Counsel shall not address facts not in evidence.
>
> "There shall be no remarks to invoke the jury's sympathy, and there shall be no remarks to excite the jury's prejudice and passions.

---

[1]Not all trial lawyers are required, or choose, to participate in such training programs.

[2]See, e.g., 6 LaFave, Israel, King, & Kerr, Criminal Procedure § 24.7(i) (3d ed. 2007) ("Appellate courts, while commonly finding a lack of prejudice flowing from improper summation by the prosecutor, have with mounting frustration expressed concern over the frequency with which such prosecutorial improprieties occur").

"There shall be no statement relative to the consequences of the jury verdict, and that includes any messages to society by the verdict. So there will be no argument relative to the consequences of the jury verdict, and that includes, of course, whatever the potential punishment is for the crime.

"There shall be no 'Golden Rule' argument, the district attorney shall not ask members of the jury to place themselves or one of their relatives in the shoes of the victim, and defense counsel shall not ask any one of the jurors to place themselves or one of their loved ones in the shoes of the defendant."

*Ibid.* While many judges follow a similar practice, I think the risk of improper closing arguments would be reduced if this practice became a matter of routine.[3]

B. *Special instruction for jurors.* The second preventative measure is an instruction to inoculate the jury against the risk of prejudice from an improper closing argument. In the spirit of the trial judge as the "controlling mind at the trial," *Whitney* v. *Wellesley & Boston St. Ry.,* 197 Mass. 495, 502 (1908),[4] and

---

[3]See, e.g., Agnes, Jr., An Ounce of Prevention Is Worth a Pound of Cure: A Collaborative Approach to Eliminate Improper Closing Arguments, 87 Mass. L. Rev. 33, 42 (2002) (suggesting use of closing argument order, provided to counsel in civil and criminal cases, which contains guidance on structuring argument within bounds of law). See also Medwed, Closing the Door on Misconduct: Rethinking the Ethical Standards that Govern Summations in Criminal Cases, 38 Hastings Const. L.Q. 915, 946-947 (2011) (advocating more guidance to prosecutors about structuring closing arguments).

[4]We deny a fundamental truth about the role of the trial judge if we are content to rely on the adversarial objection to trigger judicial intervention to prevent improper closing arguments. As Supreme Judicial Court Justice Lummus put it, the trial judge "is there to see that justice is done . . . . The judge ought not to let the jury be diverted from the real issue. The skill [and conduct] of counsel must not be allowed to mislead the jury by raising false issues or by appeals to emotion or prejudice." Lummus, The Trial Judge 20 (1937). And, in the words of Supreme Judicial Court Chief Justice Rugg:

"It is the duty of the court to be solicitous at all times to guard against improper arguments to the jury. . . . Much must be left to the discretion of the judge in this respect. It is to be remembered that his is the trained mind charged with the heavy responsibility of seeing that the scales of justice are even between the parties and incline to the one side or the other only according to the weight of credible evidence, and that

drawing on the advice of Massachusetts Appeals Court Justice Smith,[5] it would be helpful if, prior to the closing arguments, the judge instructed the jury along these lines:

> "[1] You are about to hear closing arguments by the attorneys. This is an important part of the trial because it is the final opportunity given to the lawyers [and the parties, as the case may be] to address you. It is an opportunity for the lawyers to summarize the evidence, to call your attention to certain parts of the evidence that they regard as important, and, based on the evidence, to try to persuade you to reach a certain result. However, what you are about to hear is not evidence. Lawyers are not witnesses. All the evidence in this case has been presented through the testimony of the witnesses and the exhibits which you will

no foreign considerations be interjected in argument to affect their balance. It is the plain duty of a judge presiding over a jury trial to take note of improper arguments and to neutralize their effect. It is his [or her] primary obligation to see that a fair trial is had and that no undue advantage is taken by either side. Obviously it is not the province of the court to confine arguments to a particular line of thought or within too narrow limits. . . . But the learned, wise and impartial judge, who discharges the duties of his [or her] office, is the directing spirit and dominating force of a trial to the end that a just result be reached."

*O'Neill* v. *Ross*, 250 Mass. 92, 96-97 (1924). Accordingly, the Supreme Judicial Court consistently has endorsed the practice of judges exercising discretion to intervene, sua sponte, to prevent and correct improper closing arguments. See, e.g., *Commonwealth* v. *Sherman*, 294 Mass. 379, 391 (1936); *Commonwealth* v. *Pettie*, 363 Mass. 836, 841 (1973); *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 56-57 (1975); *Commonwealth* v. *Little*, 453 Mass. 766, 777-778 (2009) (Spina, J., dissenting). Indeed, judicial intervention to prevent improper closing arguments has been described as a duty. See *Commonwealth* v. *Witschi*, 301 Mass. 459, 462 (1938) ("It is the duty of a judge sitting with a jury to guard against improper arguments to the jury. Whether he [or she] shall do this by stopping counsel in the course of such an argument, by instructing the jury to disregard such an argument, or by combining both methods, rests largely in the discretion of the judge").

[5]"The trial judge should also address the jury prior to the giving of the closing arguments and explain to the jury the proper function of closing arguments. The judge should comment on the following matters: (1) the purpose of closing arguments, (2) the arguments of counsel are not evidence in a case, (3) the jury's function is to determine the facts in the case, (4) the collective recollection of the jury concerning the facts control, (5) if counsel makes statements concerning the evidence which is not in accord with the collective recollection of the jury, the statements should be disregarded." Smith, Criminal Practice and Procedure § 35.19 (3d ed. 2007).

have an opportunity to examine and consider during your deliberations.

"[2] Our rules are designed to insure that the parties receive a fair trial, and they therefore prohibit the attorneys from making certain types of arguments in an effort to persuade you to reach a certain result or to favor or discredit either party. For example, the attorneys are not permitted to refer to facts that are not in evidence in this case. If, based on your memory and understanding of the evidence, a lawyer does this, you should disregard that comment. The attorneys are not permitted to express their personal belief in the credibility or lack of credibility of any witness who testified in this case. That determination is entirely for you to make. If a lawyer makes such a comment, you should disregard that comment.

"[3] This case must be decided solely on the basis of the admissible evidence and the law that I give to you. Attorneys are not permitted to persuade you for or against either party by appealing to human passions or prejudices. If you become conscious of any passion or prejudice as you consider the evidence or engage in your deliberations, you must put these feelings aside and not permit them to influence your thinking. If a lawyer makes such a comment, you should disregard that comment."

Agnes, Jr., An Ounce of Prevention Is Worth a Pound of Cure: A Collaborative Approach to Eliminate Improper Closing Arguments, 87 Mass. L. Rev. 33, 47-48 (2002).

These suggestions are in keeping with the view, firmly embedded in our practice, that the trial judge has both the authority and the responsibility to take appropriate steps to prevent error and the danger of an injustice before it occurs, even in the absence of an objection. See *Commonwealth* v. *Wilson*, 381 Mass. 90, 118 (1980). "Sitting with a jury, [a judge] should so conduct the trial that the case will go to the jury, so far as his lawful powers permit, free from irrelevant considerations and appeals to prejudice and emotion." *Commonwealth* v. *Haley*, 363 Mass. 513, 518 (1973), quoting from Lummus, The Trial Judge 19-21 (1937). See also *Posell* v. *Herscovitz*, 237 Mass. 513, 515 (1921).