After a Superior Court jury trial, the defendant, Luis Saldana, was convicted of three offenses involving the illegal possession of a firearm and ammunition.[2] On appeal, the defendant contends that: (1) the motion judge improperly denied the defendant's motion to suppress the showup identification; (2) the trial judge failed to give a proper jury instruction regarding the showup identification; (3) the prosecutor made improper comments in his closing argument; and (4) there was insufficient evidence to support the defendant's convictions. We affirm.
1. Motion to suppress. We recite the motion judge's factual findings supplemented by the uncontroverted evidence at the motion hearing that is consistent with the judge's findings. Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015). "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact unless they are clearly erroneous but independently review the judge's ultimate findings and conclusions of law." Commonwealth v. Depiero, 473 Mass. 450, 453 (2016), quoting from Commonwealth v. Anderson, 461 Mass. 616, 619, cert. denied, 133 S. Ct. 443 (2012).
On May 3, 2011, Worcester police Officer Mike Foley received information from a confidential informant (CI) that a suspect was carrying a gun. The suspect was described as a Hispanic male wearing black pants, a black-hooded sweatshirt, a black baseball hat, black gloves, Air-Jordan type sneakers, and silver chains around his neck. Trooper Sean Healy of the Massachusetts State Police approached a man who matched the CI's description. As Trooper Healy approached, the suspect grabbed his waist area and then fled on foot. Soon after, the defendant was detained and identified by Trooper Healy as the man who had fled.
After the defendant was in police custody, a civilian witness named Julio Solano approached Worcester police Officer Danny Diaz to inquire whether the police were looking for someone. Solano said that he saw a man hiding behind cars as a police cruiser drove by and that he was willing to look at the suspect in custody to try to identify him. Solano believed that he would recognize the individual if he saw him again.
Officer Diaz radioed Trooper Healy to bring the defendant to Solano. The defendant stood next to the police car in a spotlight. There were between six and seven police officers in the area, but only two uniformed officers were within a few feet and on each side of the defendant. Solano did not see handcuffs on the defendant. Solano saw the defendant from thirteen feet away and stated that the defendant was the individual he saw acting suspiciously moments earlier.
The defendant asserts that Solano's showup identification was unnecessarily suggestive and therefore should have been suppressed. The defendant also maintains that there was no good reason for Solano's identification because Trooper Healy had already identified the defendant.
Showup identifications are generally disfavored because of their inherently suggestive nature. See Commonwealth v. Figueroa, 468 Mass. 204, 217 (2014) ; Commonwealth v. Dew, 478 Mass. 304, 306 (2017). "A showup identification conducted in the immediate aftermath of a crime is not, however, presumptively impermissible."Dew, supra. A showup identification "violates due process only where the defendant proves by a preponderance of the evidence that it is 'unnecessarily suggestive.' " Figueroa, supra, quoting from Commonwealth v. Phillips, 452 Mass. 617, 627-628 (2008). In determining whether an identification procedure was unnecessarily suggestive, we examine whether the police had "good reason" to use the procedure. Commonwealth v. Martin, 447 Mass. 274, 279 (2006), quoting from Commonwealth v. Austin, 421 Mass. 357, 361 (1995). "Each case is fact dependent and the existence of good reason presents a question of law for the appellate court to resolve on the facts found by the motion judge." Commonwealth v. Meas, 467 Mass. 434, 441 (2014) (quotation omitted).
Here, there was "good reason" to conduct the defendant's showup identification by both Trooper Healy and Solano.[3] Solano identified the defendant as the person he saw hiding within minutes of the suspect's flight from the police. See Figueroa, 468 Mass. at 217 ("We regularly conclude that there is good reason for a showup identification where an eyewitness is shown a suspect promptly after the commission of the crime"). See also Phillips, 452 Mass. at 627-628 ; Commonwealth v. Crayton, 470 Mass. 228, 235 (2014) ("[T]here is generally 'good reason' where the showup identification occurs within a few hours of the crime"); Dew, 478 Mass. at 306. Furthermore, the police were investigating an illegal firearms offense. See Austin, 421 Mass. at 362 ("Relevant to the good reason examination are the nature of the crime involved and corresponding concerns for public safety"); Phillips, 452 Mass. at 629 ("The need for public safety was critical, and a prompt identification served to limit risk to the public").
The defendant suggests that the showup identification was unnecessary because the police had already established probable cause following Trooper Healy's identification of the defendant. "The fundamental question is whether the police 'acted permissibly' in conducting the showup identification procedure." Dew, supra at 308, quoting from Martin, 447 Mass. at 280. Solano's prompt identification corroborated Trooper Healy's identification, and thus confirmed the trajectory of the investigation. See Dew, supra at 307 (discussing "the usefulness of prompt confirmation of the accuracy of investigatory information, which if in error, will release the police quickly to follow another track" [quotation omitted] ). There was good reason to conduct the showup identification with Solano.
However, "[e]ven where there is 'good reason' for a showup identification, it may still be suppressed if the identification procedure so needlessly adds to the suggestiveness inherent in such an identification that it is conducive to irreparable mistaken identification." Figueroa, 468 Mass. at 217 (quotations omitted). The defendant points to the fact that he was taken out of a police car, flanked by two uniformed police officers, and illuminated with a spotlight during the showup. This objection has been foreclosed by Phillips. "The fact that [the defendant] had been detained in a police wagon, was handcuffed, and was flanked by two police officers during the investigation did not render the procedure unnecessarily suggestive." Phillips, 452 Mass. at 628.
2. Jury instruction. The defendant maintains that the judge abused his discretion in denying the defendant's requested jury instruction regarding showup identifications. The defendant objected to the judge's instruction both before and after the jury charge. We therefore review for prejudicial error. See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).
This case was tried over a year before the Supreme Judicial Court's opinion in Commonwealth v. Gomes, 470 Mass. 352 (2015). Gomes does not have retroactive application. Id. at 376. The judge's instruction mirrored the model jury instruction on identification and mistaken identity applicable at the time of trial. See Massachusetts Superior Court Criminal Practice Jury Instructions §§ 6.2, 6.2.1 (Mass. Cont. Legal Educ. 2d ed. 2013). In fact, the judge went beyond the model instruction by telling the jury, "You may also take into account that people of all races and ethnicities may have greater difficulty in accurately identifying members of a different race or a different ethnicity." The judge did not abuse his discretion in declining to give the requested instruction.
3. Closing argument. The defendant contends that the prosecutor improperly vouched for the Commonwealth's witnesses' credibility, misstated evidence, and attacked the defendant's character. The defendant did not object to the closing argument at trial. Consequently, we review for error, and if any, for a substantial risk of a miscarriage of justice. See Commonwealth v. Olmande, 84 Mass. App. Ct. 231, 235 (2013).
The defendant contends that the prosecutor improperly vouched for the Commonwealth witnesses when he said, "I would suggest there's no evidence whatsoever that any of these individuals who testified before you came in with an agenda or a bias to lie." The prosecutor was permitted to use the language "I would suggest" to "avoid expressing [his] personal belief about the witness's truthfulness." Commonwealth v. Molle, 56 Mass. App. Ct. 621, 631 (2002). In addition, the prosecutor was permitted to argue why the Commonwealth's witnesses had no motive or bias to lie. See Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 179 (2008) ("[The] prosecutor may argue that [the] witness had no motive to lie, as [a] fair response to an attack on the credibility of a government witness" [quotation omitted] ). The defendant focused the majority of his closing argument on the lack of reliability in the eyewitness identifications. "Because the defendant raised the issue of credibility of the three eyewitnesses' testimony, it was not improper for the prosecutor to comment on the consistency of their accounts; he did not vouch for their credibility." Commonwealth v. Guy, 441 Mass. 96, 113 (2004). Moreover, the prosecutor preceded the comment with "[Y]ou determine credibility" and ended with "You evaluate it," giving further, proper context to his remarks. See Commonwealth v. Koumaris, 440 Mass. 405, 414 (2003) ( "[C]losing arguments must be viewed in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial" [quotations omitted] ); Commonwealth v. Carriere, 470 Mass. 1, 19 (2014) (same).
Likewise, the prosecutor did not improperly attack the character of the defendant when he referenced the defendant's "criminal mind." In context, the prosecutor's argument referred to the defendant's efforts to flee and to create an alibi. The argument was permissible because it was based on reasonable inferences that a jury could draw from the evidence. See Commonwealth v. Bois, 476 Mass. 15, 31-33 (2016) (use of the term "criminal mind" in closing argument permissible because "[t]he jury also reasonably could have inferred that the defendant's actions after the [crime] were a conscious attempt to cover his tracks, ... [and] to establish an alibi").
Finally, the defendant argues that the prosecutor misstated evidence and referred to matters that had been excluded when he stated: "And when [Trooper Healy] looks at this defendant, he's able to positively identify him as the person he saw running with what he believed to be a firearm hidden on his person. That's what Trooper Healy's testimony is." On cross-examination, defense counsel asked Trooper Healy if he followed the suspect over the fence and Trooper Healy replied, "No, because I thought he had a weapon." The prosecutor was allowed to argue facts in evidence as to Trooper Healy's belief.
4. Sufficiency. The defendant maintains the trial judge erred in denying his motion for required findings of not guilty because the evidence at trial was insufficient to prove that the defendant was the suspect that fled from the police and that the defendant possessed the firearm in question. We review the evidence in the light most favorable to the Commonwealth to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).
Trooper Healy identified the defendant as the individual he saw flee. Officer Foley identified the defendant's clothing.[4] Solano identified the defendant by his clothing as the individual who was acting suspiciously while the police were in pursuit.[5] There was sufficient evidence to permit the jury to infer that the defendant was the man who fled from the police.
The jury could also reasonably infer that the defendant possessed the firearm. Trooper Healy and Officer Foley testified that the suspect grasped at a heavy object in his waistband before he ran. The jury could infer that the defendant was hiding a firearm in his waistband. In addition, the defendant fled from the police and jumped a fence. On the opposite side of the fence-in the exact location that Officer Foley saw the defendant jump-a silver pistol was recovered. A rational jury could infer that the firearm either fell from the defendant's waistband or that he discarded it while fleeing the police. See Commonwealth v. Jefferson, 461 Mass. 821, 826 (2012).
Judgments affirmed.

The defendant was convicted of possession of a firearm with two prior violent or serious drug offenses, pursuant to G. L. c. 269, §§ 10(a ) and 10G(e ) ; unlawful possession of ammunition with two prior violent or serious drug offenses, pursuant to G. L. c. 269, §§ 10(h ) and 10G(e ) ; and possession of a firearm with serial numbers defaced, pursuant to G. L. c. 269, § 11C.

The defendant relies on facts introduced at trial to support his challenge to the judge's decision on the motion to suppress his identification. At trial, Solano testified that he had not seen the face of the hiding man, only the clothing. However, "in reviewing a judge's ruling on a motion to suppress, an appellate court 'may not rely on the facts as developed at trial' even where the testimony differed materially from that given at trial." Commonwealth v. Gonzalez, 469 Mass. 410, 416 (2014), quoting from Commonwealth v. Deramo, 436 Mass. 40, 43 (2002).

Officer Foley testified that he did not see the defendant's face when he fled because he was focused on the defendant grasping at something heavy in his waistband. Foley was also able to identify the defendant by his height and build.

We note that Solano was thoroughly cross-examined on the reliability of his identification. Trooper Healy also gave varying accounts of how much of the defendant's face he saw. It was up to the jury to assess the weight to give to the eyewitness testimony. See Commonwealth v. Forte, 469 Mass. 469, 481 (2014).