NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-114

COMMONWEALTH

vs.

GIANCARLO D. MAZARIEGOS-PEREZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant, Giancarlo D. Mazariegos-Perez, was convicted of operating a motor vehicle while under the influence of liquor (OUI).[1]  On appeal, he contends that the admission of a trooper's opinion testimony, and the prosecutor's use of that testimony in closing argument, constituted reversible error.  We affirm.

Background.  On January 29, 2021, at approximately 12:19 A.M., Massachusetts State Police Trooper Harold Sousa was dispatched to a two-car crash on Route 16 in Everett.  On arrival he observed a Toyota Corolla "with substantial front-end damage" located behind a Ford Fusion "with substantial rear-end

---

[1] The defendant was also charged with negligent operation of a motor vehicle.  Prior to the start of trial, the judge dismissed that charge.  The defendant was found not responsible for a civil motor vehicle infraction.

damage."  The front of the hood on the Toyota "was bent in; the grill was severely damaged."  Trooper Sousa noticed that the operator of the Toyota, later identified as the defendant, "was emitting the odor of an alcoholic beverage, and his eyes were bloodshot and glassy."  He further noted that the defendant "was difficult to understand because his speech was slurred."  The defendant admitted that "he had two drinks to celebrate . . . graduating IT School."

After speaking with the operators of both vehicles, Trooper Sousa asked the defendant to perform field sobriety tests. Trooper Sousa first explained and then physically demonstrated for the defendant the nine-step walk and turn test.  The defendant took the test.  He walked sixteen steps instead of nine, "missed heel-to-toe on every step, essentially taking normal strides" in contravention of Trooper Sousa's instructions and demonstration, shuffled his feet on the turn, took twelve steps instead of nine on the return, and "missed heel-to-toe on every step" again.  Next, Trooper Sousa explained and demonstrated for the defendant the one-leg stand test.  The defendant "raised his right foot six inches above the ground, counted to three, and then put it down forward, taking somewhat of a step, and then raised his left foot, and . . . started to count again."  After three attempts, the defendant "finally did complete the test as instructed," but "he swayed side-to-side,

2

and put his foot down twice," and "almost fell over." Based on his observations of the defendant, including the performance on the field sobriety tests, Trooper Sousa formed the opinion that the defendant was under the influence of alcohol. He then placed the defendant in the police cruiser and transported him to the police barracks. On opening the door to the cruiser to escort the defendant to the booking room, Trooper Sousa noted an odor of an alcoholic beverage that was not present "before the defendant got in the car."

During the booking process, the defendant became angry, cursed at Trooper Sousa, told Trooper Sousa that "this is taking way too long," and asked "[a]re you doing this on purpose, or are you just an idiot?" He then stated, "[y]ou're probably just an idiot." Later during the booking process, the defendant cried and stated that "he knew he had messed up, but he only had two beers." "During booking," Trooper Sousa continued to note an odor of an alcoholic beverage coming from the defendant, as well as other signs of impairment.

Discussion. On direct examination, Trooper Sousa testified that while at the State police academy, he received one week of training related to field sobriety testing and the investigation of people suspected of driving under the influence of alcohol. The testimony was brief, and the defendant did not object to it. Later in the trial, Trooper Sousa was asked whether he had

3

formed an opinion regarding the defendant's sobriety.  Over the defendant's objection, Trooper Sousa responded that based on his observations of the defendant at the scene as well as the defendant's performance on the field sobriety tests, he formed the opinion that the defendant "was under the influence of an alcoholic beverage."

The defendant argues, for the first time, that in eliciting Trooper Sousa's specialized training and experience in the field of OUI investigations, the prosecutor effectively transformed the trooper into an expert witness in the eyes of the jury.[2]  He further contends that the judge did not provide the jury with adequate instructions on the proper use of the trooper's "expert" opinion, and thus the conviction must be vacated. Where the defendant did not raise the issue of improper expert testimony at trial, and did not object to the judge's jury instructions at trial, we review to determine if there was error, and if so, whether it created a substantial risk of a

_____

[2] The defendant did not object to Trooper Sousa's testimony regarding his training and experience, did not state the basis for his objection to Trooper Sousa's opinion as to the defendant's sobriety, and did not move to strike Trooper Sousa's testimony.  The objection to the question and testimony now challenged on appeal did not preserve the issue of alleged "improper expert testimony," raised for the first time on appeal.  See Commonwealth v. Bonds, 445 Mass. 821, 828 (2006) ("We have consistently interpreted Mass. R. Crim. P. 22, 378 Mass. 892 [1979], to preserve appellate rights only when an objection is made in a form or context that reveals the objection's basis").

4

miscarriage of justice. See Commonwealth v. Moreno, 102 Mass. App. Ct. 321, 324 (2023), citing Commonwealth v. Bonds, 445 Mass. 821, 828 (2006).

"In a prosecution for operating a motor vehicle while under the influence of alcohol, lay witnesses, including police officers, may not opine as to the ultimate question whether the defendant was operating while under the influence, but they may testify to his apparent intoxication." Commonwealth v. Canty, 466 Mass. 535, 541 (2013), quoting Commonwealth v. Jones, 464 Mass. 16, 17 n.1 (2012). Here, the question called for Trooper Sousa to offer an admissible lay opinion, and thus the testimony was permissible. See Moreno, 102 Mass. App. Ct. at 325-326. Cf. Canty, supra.

As to the defendant's claim that the judge's instructions were somehow inadequate, the defendant did not object to any jury instructions, including the judge's thorough instructions regarding opinion testimony and field sobriety testing. We further note that the defendant made no request for any instructions regarding expert witness testimony. Trooper Sousa was certainly permitted to testify about his training and experience so that the jury could conclude that the field sobriety tests were administered properly by someone who knew how to administer them. Had the defendant requested an instruction to the effect that the officer's opinion regarding

5

the defendant's level of sobriety or intoxication was not an expert opinion based on scientific, technical, or other specialized knowledge, but, rather, was a lay opinion that the jury could accept, accept in part, or reject -- as with any other admissible lay opinion testimony -- the judge would have been warranted in providing it.  Nonetheless, the judge's failure to give one sua sponte did not create a substantial risk of a miscarriage of justice because the case against the defendant was strong:  It included his rear-ending another car, smelling of alcohol, having glassy eyes and slurred speech, and failing two field sobriety tests; as well as his swaying, almost falling down, and labile moods.  We further note that any risk of prejudice to the defendant was diminished by the judge's explicit final instruction to the jury that they ultimately must determine whether the defendant was under the influence of alcohol, and that they may consider any opinion they heard about the defendant's sobriety "and accept it or reject it."  See Canty, 466 Mass. at 545.

As to the prosecutor's closing argument, even assuming arguendo that the prosecutor should not have referenced Trooper Sousa's training and experience, we discern no substantial risk of a miscarriage of justice.[3]  Again, the evidence in the case

---

[3] The defendant did not object to the prosecutor's reference in closing argument to Trooper Sousa's training and experience.

was strong.  See Commonwealth v. Saulnier, 84 Mass. App. Ct. 603, 607 (2013).  In addition, the judge repeatedly and properly instructed the jury to rely on their own common sense and experience, including their common sense and experience concerning the effects of alcohol.  See Commonwealth v. Sands, 424 Mass. 184, 188 (1997) ("A lay juror understands that intoxication leads to diminished balance, coordination, and mental acuity from common experience and knowledge").  Finally, the judge instructed the jury four separate times that closing arguments are not evidence and cannot be considered when the jury is weighing evidence.  The instructions were comprehensive and clear, and we presume the jury followed them.  See Commonwealth v. Olmande, 84 Mass. App. Ct. 231, 237 (2013).  Accordingly, there was no substantial risk of a miscarriage of justice based on the alleged improper opinion testimony.

Judgment affirmed.

By the Court (Rubin, Neyman & Walsh, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered:  October 19, 2023.

---

[4] The panelists are listed in order of seniority.

7