NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-349

COMMONWEALTH

vs.

ALBERT TREMBLAY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On January 31, 2020, the defendant, Albert Tremblay, was convicted by a Superior Court jury of three counts of child rape and three counts of indecent assault and battery on a child under fourteen.  On appeal, the defendant argues that the prosecutor made multiple statements during closing argument that were improper and prejudicial, and thus require reversal of the convictions.  We affirm.

Background.  We summarize the evidence presented at trial, reserving certain details for later discussion.

The victim testified that when she was between the ages of seven and thirteen years old, the defendant, who was her uncle,

repeatedly sexually abused her.[1] During this time, the defendant lived with his mother, the victim's grandmother, in Attleboro. According to the victim, it was during her visits to her grandmother's house that the defendant would abuse her. Beginning when the victim was seven or eight years old, the defendant began to grope the victim's genital area and force her to touch his genital area. The abuse escalated over time to include the defendant forcibly penetrating the victim's vagina and mouth with his penis.

One day in June 2004, the victim's parents dropped her off at her grandmother's house while they went on a trip to New Hampshire. That evening, the victim was playing video games with the defendant in the defendant's room. At one point, the defendant began to sexually abuse her. The victim decided she "wasn't going to take it anymore." She got a knife from the kitchen and sat with it all night. In the morning, the defendant followed the victim down the driveway as she left to go to school. The victim showed him the knife and told him to stay away from her. On June 23, 2004, the victim, thirteen years old at that time, disclosed in an interview with the police that she had been "molested" by a relative at her

---

[1] The victim was twenty-nine years old when she testified at trial.

2

grandmother's house.  The victim did not identify the defendant as her abuser to the police out of concern that the disclosure would cause much distress to her grandmother.  In 2014, the victim identified the defendant as the person who abused her.

The defendant did not present a defense after the Commonwealth rested its case.

Discussion.  The defendant argues that the Commonwealth committed several errors in its closing argument by (1) arguing the victim had no motive to lie after successfully excluding the evidence of motive, (2) arguing facts and inferences either contrary to, or unsupported by, the evidence, and (3) shifting the burden of proof to the defendant.  The defendant preserved his arguments through timely objections.  We therefore review his claims for prejudicial error.  Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).  "An error is not prejudicial if it 'did not influence the jury, or had but very slight effect'; however, if we cannot find 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error,' then it is prejudicial" (citation omitted).  Id.

When evaluating a claim of error in a prosecutor's closing argument, we must consider "(1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues

3

or went to the heart of the case; (3) what specific or general instructions the judge gave the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusions." Commonwealth v. Kater, 432 Mass. 404, 422-423 (2000). "Once a properly raised objection to a prosecutor's argument is found to be valid, the entire record, including the balance of the prosecutor's argument, becomes relevant in determining whether the error was prejudicial to the point of requiring a reversal of the conviction." Commonwealth v. Kozec, 399 Mass. 514, 523 (1987). "We consider the cumulative effects of all the errors in the context of the entire arguments and the case as a whole." Commonwealth v. Wilson, 427 Mass. 336, 351 (1998).

1. Victim's motive to lie. The defendant contends that the Commonwealth erred by arguing that the victim had no motive to lie after successfully excluding evidence of her motive. Prior to trial, the Commonwealth moved to exclude from evidence several statements made by the defendant to a detective. These statements included the defendant's claim that his sister, the victim's mother, had stated, "If you spend any more of mom's money, I'll kill you." The judge also sustained the Commonwealth's objection to the defendant's attempt to elicit

4

statements made by the defendant and victim's mother to the detective.

The defendant argues that this statement constituted evidence of the victim's motive to lie, because it showed a conflict between the victim's mother and the defendant over the use of the grandmother's money. Because the Commonwealth successfully moved to exclude this evidence, the defendant argues, it was improper for the Commonwealth to then argue in closing that there was no evidence that the victim had a motive to lie.

Notably, the Commonwealth did not seek to exclude admissible evidence regarding the possible financial motive to lie. Rather, the Commonwealth's pretrial motion and the prosecutor's objection at trial explicitly sought to exclude a statement allegedly made by the victim's mother to the defendant, as relayed by the defendant to the detective, as inadmissible hearsay evidence. This line of questioning was therefore properly restricted by the judge. See Commonwealth v. Markvart, 437 Mass. 331, 335 (2002) ("hearsay not otherwise admissible under the rules of evidence is inadmissible at the trial . . . unless specifically made admissible by statute); Mass. G. Evid. § 802 (2024) (same).

5

However, the defendant argues that because the Commonwealth successfully excluded evidence regarding the victim's possible motive to lie, it was impermissible for the Commonwealth to then rely on that lack of evidence during its closing argument.  See Commonwealth v. Harris, 443 Mass. 714, 732 (2005) ("Counsel may not, in closing, 'exploit[] the absence of evidence that had been excluded at his request'").  We disagree that any such exploitation occurred.  The Commonwealth did not argue (knowing it to be untrue) that the defendant had not suggested any motive for the victim to lie.  Instead, the Commonwealth argued that a separate motive the defendant did argue to the jury was implausible.[2]  As noted above, even if the judge had allowed the Commonwealth's motion to exclude the defendant's statements regarding the financial dispute between him and the victim's mother, the defendant could have pursued this theory by calling the witness to testify at trial, thus avoiding the hearsay

_____

[2] The prosecutor's objected-to statements included the following:

"And this is a good place to talk about [the victim's] motive.  What motive is there to lie?  If these allegations aren't true, then what on earth could be her motivation for making up these disgusting facts?

"Well, the defense told you what her motive was, right, in his opening statement, that [the victim] wanted to go on a fun vacation to New Hampshire.  You remember that, right? I mean really?"

6

objection.  Instead, defense counsel notified the judge of his decision not to call the victim's mother to testify.  There is no indication this decision represented anything other than a strategic choice, and there was no suggestion the mother was either unwilling or unavailable to testify.  The defendant also refrained from questioning the victim about any financial dispute between her mother and the defendant.

The Commonwealth is permitted to argue that a witness has no motive to lie where the defendant has attacked the witness's credibility.  Commonwealth v. Shanley, 455 Mass. 752, 777 (2010).  This was the case here, where defense counsel, in his opening statement, ascribed the victim's motive to lie as being upset she had to stay at her grandmother's house while her parents vacationed in New Hampshire.  Counsel then argued the victim was not a credible witness in his closing argument.  The prosecutor's responsive argument concerning the victim's lack of motive was grounded in the evidence admitted at trial, and represented a fair response to the closing argument made by the defendant's counsel.  See Commonwealth v. Benoit, 452 Mass. 212, 229 (2008).

2.  Reference to struck testimony.  The Commonwealth called the defendant's cousin to recount her observations of the victim on one occasion when the victim was visiting her grandmother's

house. The cousin testified that while she was studying the bible with the victim's grandmother, she saw the victim exit the defendant's bedroom and pass by her to go to the bathroom. When she exited the bathroom, the victim again walked past the cousin. The cousin testified that the victim did not respond to her greetings and also failed to make eye contact with her. The cousin described the victim as appearing distracted and "detached." This behavior was unusual to the cousin when compared to her previous interactions with the victim. When the cousin testified she left the grandmother's house soon thereafter because she felt "uncomfortable," the defendant objected to this characterization. The judge sustained the defendant's objection, and struck the cousin's response that she was "uncomfortable."

In her closing, the prosecutor referenced the cousin's testimony, arguing that "there was something about that interaction that made her decide to end her bible study early." On appeal, the defendant argues that the Commonwealth impermissibly referenced evidence that was struck from the record. However, the Commonwealth did not reference the portion of the cousin's testimony that was struck, which was her "discomfort" after witnessing the victim's behavior. Rather, we construe the argument as asking the jury to make a reasonable

8

inference that the cousin decided to leave the house early because of the unusual manner in which the victim had presented. This line of argument did not constitute error. See Commonwealth v. Samia, 492 Mass. 135, 156 (2023) ("counsel may argue the evidence and the fair inferences which can be drawn from the evidence" [citation omitted]).

Even if the prosecutor's remark had been predicated on the struck testimony, no prejudice resulted from the error considering the judge's instructions to the jury. Notably, the judge instructed the jury before opening statements, before closing arguments, and after closing arguments that closing arguments are not evidence. The judge also instructed the jury multiple times that the jury's function is to determine the facts of the case, a role that includes assessing credibility, resolving any discrepancies in the evidence, and drawing reasonable inferences from facts proven to them. Considering the judge's thorough instructions as to the jury's role, we conclude they were not meaningfully influenced by any attempt on the prosecutor's part to reference the cousin's struck testimony about her discomfort.

3. Burden shifting. The defendant claims that the following statements made by the prosecutor misstated the

standard of proof and shifted the burden of proof onto the defendant:

> "[I]t's your job . . . to determine what evidence you think is credible, throw out what you don't find credible, and see what you have left, and ask yourself, is there any reasonable explanation for the evidence you've heard other than guilt.

> "[W]hen you take this evidence as a whole, it points clearly to guilt.  There's no other reasonable explanation for all of the evidence that you've heard, except that [the defendant] is guilty."

We are not persuaded.  Determining the credibility of the evidence is solely within the jury's province.  Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007) and 460 Mass. 12 (2011).  It was proper for the prosecutor to ask the jury to evaluate the evidence as a whole before basing their verdict on credible evidence, especially when considering the defendant asked the jury to dismiss the Commonwealth's evidence as unbelievable.  See Commonwealth v. Platt, 440 Mass. 396, 401 (2003) ("If the evidence lends itself to several conflicting interpretations, it is the province of the jury to resolve the discrepancy and 'determine where the truth lies'" [citation omitted]).  Moreover, we are confident the jury understood their role in determining what evidence was credible.  As mentioned, the judge advised the jury of their role as fact finder numerous times.

The defendant also argues that the Commonwealth improperly shifted the burden of proof onto him because it suggested to the jury that he had some burden of offering a "reasonable explanation" for the evidence aside from his guilt. We disagree.

A closing argument "must be viewed 'in the context of the entire argument, and in light of the judge's instruction to the jury, and the evidence at trial'" (citation omitted). Commonwealth v. Barbosa, 477 Mass. 658, 670 (2017). "[A] prosecutor may properly 'emphasize the strong points of the Commonwealth's case and the weaknesses of the defendant's case,' even if he or she may thereby 'prompt some collateral or passing reflection' on the fact that the defendant has not produced certain evidence" (citation omitted). Commonwealth v. Grier, 490 Mass. 455, 473 (2022). Here the prosecutor's contested statements, by their explicit terms and taken in the context of the entire closing argument, permissibly conveyed the point that the weight of the credible evidence pointed toward guilt, not that the defendant had to prove his innocence. Cf. id. at 472-473 (prosecutor's statement that "[t]here isn't a shred of evidence" as to defendant's third-party culprit defense was permissible comment as to strength of Commonwealth's case and weakness of defendant's).

11

Even if we were to assume arguendo that the prosecutor's comments crossed the line by shifting the burden to the defendant, any such error was cured by the judge's instructions. In his final instructions to the jury, the judge stated three times that the burden of proof is always on the Commonwealth. The judge instructed the jury to that effect in his opening charge as well. The judge also instructed the jury multiple times that the defendant is presumed innocent and therefore does not need to prove his innocence. Finally, the judge repeatedly instructed the jury that it was the Commonwealth's burden to prove the defendant's guilt beyond a reasonable doubt. We presume the jury followed the judge's instructions. See Commonwealth v. Williams, 450 Mass. 645, 651 (2008).

4. Misstatements concerning defendant's interview. During the initial police investigation into the victim's allegations of sexual abuse, a detective interviewed the defendant. At trial, the detective testified that when he confronted the defendant with an allegation that the victim was "molested" by a relative who lived with her, the defendant responded that he was not the only man who lived at the grandmother's house. The defendant then identified the victim's brother as residing in the grandmother's home as well. Although the defendant also expressly denied having committed any sexual abuse against the

12

victim during this interview, the defendant's denial was not introduced in evidence during the trial.

The victim's brother testified at trial that he lived at the grandmother's house in 2004 during the time period when the police investigation happened. However, the brother denied being at the grandmother's house on any occasion when the victim slept over. In addition, the victim testified that while her brother sometimes lived at their grandmother's house, he was never present when the victim was abused.

In her closing argument, the prosecutor argued to the jury that the defendant had lied to the police when he told the officer that the victim's brother also lived at the grandmother's house, in order to shift suspicion onto the brother. The prosecutor also stated that the defendant had not denied his guilt when interviewed by the police officer. The judge sustained the defendant's contemporaneous objections to these statements.

On appeal, the defendant argues that the Commonwealth's arguments constituted error and prejudiced the defendant by conveying to the jury that the defendant had lied about the victim's brother living with the grandmother, and further, by incorrectly stating that the defendant had not denied having sexually abused the victim.

13

Although we agree that the Commonwealth committed error by misstating the evidence on both accounts, these misstatements were not of the degree to influence the jury when viewed in light of the evidence that the brother did in fact live at the grandmother's house, the weight of the evidence against the defendant, and the judge's instructions. See Commonwealth v. Imbert, 479 Mass. 575, 587 (2018) (no prejudice when error was mitigated by judge's instructions and evidence weighed in favor of conviction). First, the jury heard the victim and her brother testify that he lived at the grandmother's house during the time she was abused. However, the victim unequivocally identified the defendant, not her brother, as the individual who forced her to engage in vaginal and oral intercourse on multiple occasions over a span of about five years.

Furthermore, the judge mitigated the prejudice from the prosecutor's inaccurate statements by sustaining the defendant's contemporaneous objection to the statements and by instructing the jury multiple times that closing arguments are not evidence. As referenced above, the judge also clearly instructed the jury that it was their function to determine the facts.[3] "We presume,

---

[3] In his final charge, the judge instructed the jury that "[y]ou are the sole and exclusive judges of the facts. You alone determine what evidence to accept, how important any evidence is that you do accept, and what conclusions to draw from all the evidence."

14

as we must, that the jury follow the judge's instructions and understand the argumentative, not factual, nature of closing arguments." Commonwealth v. Olmande, 84 Mass. App. Ct. 231, 237 (2013).

The judge also provided an adequate remedy for the prosecutor's error in suggesting that the defendant had not denied his guilt to the police. At sidebar immediately following the judge's final instructions, and in response to the defendant's objection, the Commonwealth proposed a stipulation to correct its error. The defendant agreed that at a minimum the jury should be informed of the stipulation but argued that a mistrial was proper given the potentially prejudicial effect of the statement. Before the judge excused the jury to consider their verdict, the judge instructed them to the following:

> "Ladies and gentlemen, if you remember during the instructions, I mentioned about stipulations, how you can -- how to treat those as evidence that the parties have agreed to. And you'd probably say, well, we didn't have a stipulation. Well, we have a stipulation. Okay? And this will be reduced to writing and sent to you. You're not to hold it against either party or speculate why it's coming in now. It's coming in now as evidence. All right? And this is evidence that you can consider.
>
> "And the stipulation is that the parties stipulate to the following: That the defendant, Albert Tremblay, denied ever touching [the victim] during his 2004 police interview. All right? And that's going to be reduced to writing. You'll have that with you along with the other exhibits."

15

This instruction and stipulation prevented the prosecutor's misstatement from influencing the jury. The jury did not have to decide whether the defendant denied touching the victim during the police interview because they were instructed it was agreed-on evidence that the defendant had done so. Considering the judge's instructions as well as the entire trial record, we conclude the prosecutor's two errors did not influence the jury. See Kater, 432 Mass. at 424 ("curative instruction specifically and appropriately eliminated any prejudice that might have been caused by the prosecutor's comment"). Contrast Commonwealth v. Niemic, 483 Mass. 571, 596-597 (2019) (new trial warranted where judge's general and curative instructions could not mitigate prosecutor's numerous improper arguments including misstating evidence, arguing impermissible personal opinion, arguing rebuttal testimony as substantive evidence, and playing to jury sympathy).

On appeal, the defendant also argues that this remedy was improper and constituted structural error because the stipulation was given after the close of all evidence and after closing arguments. We disagree.

A structural error in trial is one that affects "certain basic, constitutional guarantees that should define the framework of any criminal trial." Weaver v. Massachusetts, 582

16

U.S. 286, 295 (2017). On the contrary, as the Commonwealth argues, the judge in this case reopened the evidence before jury deliberations in order to protect the defendant and ensure that the prosecutor's misstatement of the evidence during closing argument would not prejudice the defendant. As such, this is not a question of structural error, but one of abuse of discretion by the trial judge. See Jones v. Vappi & Co., 28 Mass. App. Ct. 77, 82 (1989) ("Whether to admit additional evidence after a party has rested lies within the sound discretion of the trial judge"). While stipulations "shall be placed on the record before the close of evidence," Mass. R. Crim. P. 23 (b), 471 Mass. 1501 (2015), it is nevertheless within the trial judge's discretion to reopen the evidence. Commonwealth v. Agiasottelis, 336 Mass. 12, 15 (1957), and cases cited. Though the stipulation in this case was entered after both closing arguments, such a distinction is of little consequence, especially where the need for the stipulation did not arise before the closings and the jury had not been yet dismissed for deliberations. See Commonwealth v. Ortiz, 466 Mass. 475, 484 (2013) ("we cannot identify any prejudice to the defendant arising from the fact that the stipulation itself was explained to the jury during the judge's final instructions and not placed before them during the evidence phase of the trial").

17

The judge did not abuse his discretion in providing the stipulation to the jury after the close of evidence.  Instead, the judge properly exercised his discretion to correct an error while also protecting the defendant's right to receive a fair trial.

Judgments affirmed.

By the Court (Milkey, Sacks &
  Smyth, JJ.[4]),

*Paul Little*

Clerk

Entered:  August 23, 2024.

---

[4] The panelists are listed in order of seniority.